No. 28,086.

SALLIE PHILLIPS, *Appellee*, v. THE KANSAS CITY, LEAVENWORTH & WESTERN RAILWAY COMPANY, *Appellant*.

(267 Pac. 4.)

Opinion filed May 5, 1928.

*Robert Stone, George T. McDermott, James A. McClure, Robert L. Webb, Beryl L. Johnson,* all of Topeka, *McCabe Moore* and *F. H. McKim,* both of Kansas City, for the appellant.

*James L. Smalley* and *James F. Getty,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The proceeding was one by the widow of John W. Phillips, to obtain compensation for his death. While employed as ticket agent for defendant at its station in Kansas City, Kan., he was fatally injured by blows on the head inflicted by some one whose identity has not been ascertained. Plaintiff recovered, and defendant appeals.

The injury occurred December 6, 1925. Phillips did not regain consciousness, and died December 9. Plaintiff was wholly dependent on his earnings, and was the sole dependent. Claim for compensation was made and consent to arbitration was tendered January 28, 1926. Defendant did not respond, and on March 31, 1926, plaintiff filed in the district court a petition in all respects sufficient as a petition in an action for compensation. The petition concluded with the following prayer:

"Wherefore, plaintiff prays that she recover herein the sum of twenty-eight hundred and eighty ($2,880) dollars, with costs hereof, and that, in the event the defendant fails and refuses to agree on an arbitrator, the court appoint a suitable person to arbitrate her claim in the foregoing petition set forth, pursuant to the provisions of chapter 218, Laws of 1911 of Kansas, and laws amendatory thereof."

Unless defendant consented to arbitration of issues other than amount of compensation, other issues were determinable only by trial in an action. Plaintiff was privileged, however, to require arbitration of amount of compensation if she so desired, and since it was evident she would need court aid, it was proper for her to initiate both courses of procedure at the same time. While the prayer of the petition contemplated arbitration of plaintiff's entire claim, the prayer was sufficient as one for arbitration of amount of compensation, and that issue having been determined by arbitration, for judgment for plaintiff.

Defendant filed a general denial and the court appointed an arbitrator. Over defendant's objection, the court referred all issues to the arbitrator—something the court was not authorized to do without defendant's consent, and defendant did not consent. Defendant did not appear before the arbitrator. The arbitrator determined all issues in favor of plaintiff, and made an award accordingly. Defendant filed a motion to review the award on two grounds: first, the arbitrator acted without authority, and second, the award was grossly excessive. The first ground of the motion was good as to all matters embraced in the arbitrator's findings except those relating to amount of compensation, and should have been sustained except as to amount of compensation. Amount of compensation being a matter properly referable, the amount of the award would stand, unless defendant moved for review, and the motion for review did not waive the unauthorized submission to arbitration of other issues.

Plaintiff filed a motion for judgment on the award. As the case then stood, a single one of several issues in the compensation proceeding—amount of compensation—had been determined, and the award was up for review. All other issues were made up by the petition and answer, the cause stood on the docket awaiting trial, and plaintiff was not entitled to judgment until those issues were tried and the motion to review the amount of the award was disposed of. Defendant contends the action has not been tried.

Trial by jury has been waived by both parties by failure to demand a jury within ten days after issues were joined. (R. S. 44-534.) The questions of fact in the action and the questions of fact raised by the motion to review, were triable by the court. The court made an order that evidence be produced by affidavit, and the parties entered into the following stipulation:

"It is hereby stipulated and agreed that the above-entitled cause be submitted, without argument, to the Hon. C. A. Miller, judge of division No. 4 of the above-entitled court, on the record and files herein, including the motion of defendant to set aside the award of the arbitrator and the motion of plaintiff for judgment on the award of the arbitrator, with affidavits submitted by both parties in support of said motions pursuant to the order made herein by the judge of division No. 4 aforesaid, and briefs heretofore submitted by both parties. Counsel to furnish additional briefs or affidavits if desired by the court."

Pursuant to the stipulation, both parties filed affidavits. Defendant's affidavits were not confined to amount of compensation, but related to liability to pay compensation. There was really but one question in the case, whether the injury arose out of the employment. Apparently all available evidence on that subject was embraced in the affidavits, and the fact that the case was submitted to the court for final determination on the merits is established by the journal entry of judgment, which defendant has not caused to be corrected if wrong, and which reads as follows:

"Now on this 23d day of July, A. D. 1927, at the June term of court, this cause comes on for hearing before Hon. C. A. Miller, judge of division 4, on the application and motion of defendant to review and set aside the award of the arbitrator heretofore submitted herein and the motion filed by plaintiff for judgment on the award of the arbitrator heretofore submitted herein and the stipulation agreed to by both parties submitting said cause to this court without argument for final judgment on said motions supported by the affidavits and briefs filed by both parties hereto."

Defendant granted privilege to Phillips to operate a lunch counter, handling sandwiches, coffee, drinks, candies, cigars and magazines, in the waiting room of its station building. The material terms of the concession follow:

"It is further understood and agreed that for and in consideration of the concession hereby granted, . . . said party of the second part shall handle and sell the tickets for passenger transportation on the railway line of said party of the first part, including conductors' tickets and supplies, in a good and businesslike manner, in the waiting room of said building; that said party

of the second part shall keep said stand and waiting room open and sell tickets for said first party continuously from the hours of 7 a. m. to 10:15 p. m. . . .

"It is expressly understood and agreed that said party of the second part, in operating the concession hereby granted, shall at all times do so in a courteous, respectful and businesslike manner, and that the same shall be kept in a neat and sanitary condition, and that the habit of individuals undesirable to said party of the first part loafing in said waiting room be not allowed or permitted by said party of the second part; that the fixtures to be furnished and used by said party of the second part shall in all respects be first-class fixtures, which will in no way impair the general appearance of said waiting room."

The waiting room was thirty feet long north and south and fifteen feet wide east and west. The entrance was on the west side, south of the center. Commencing a few feet north of the door were show cases located to leave space between them and the west and north walls, in the form of an L ten feet in length north and south and six feet in length east and west. The entrance to the space was through a small gate at the south end. The ticket case and ticket window were at the east end of that portion of the space which extended along the north wall. There were toilet rooms, and seats for passengers in the waiting room.

Phillips received his injuries on Sunday, the day receipts of the ticket office were largest. In the afternoon he deposited in the safe in the freight room of the station the receipts from sales of tickets up to 1:15 p. m., amounting to $122. His wife, who had been with him during the afternoon, left the ticket office at 6:45 p. m., and nothing is known of events occurring in the waiting room until approximately 9 p. m. At about that hour a woman and her daughter, who intended to take the 9:15 car for Leavenworth, came into the waiting room and took seats. When they entered they saw no one. Presently they observed that the little gate by the candy counter was open, and that inside the gate a man was crouched in a sitting posture on the floor between the wall and the showcase, and was apparently unconscious. The woman called the driver of the automobile in which she came to the station, and he called the police. Phillips had been beaten to insensibility by blows on the head, which caused concussion at the base of the skull. After he had been taken to a hospital, a captain of police, together with defendant's auditor, inspected the room. The door of one show case was open, and about twenty dollars in money were found, some in the ticket drawer, some in a cigar box, and some in a cigar can under the counter. Fifteen dollars in bills were found in Phillips'

pockets when he was undressed at the hospital. A few days later his spectacles were found in a bent and damaged condition, under the ice box. The station was located at a well-lighted traffic center in Kansas City, Kan., and the waiting room was well lighted. Within the two years Phillips acted as agent of the company the ticket office had been robbed four or five times, and a highwayman had robbed defendant's freight agent in the daytime.

Employment was not contested. Defendant put in evidence the lease, which proved employment. Besides that, the arbitrator's findings essential to computation of amount of compensation disclosed that defendant paid Phillips a salary of $30 per month, in addition to granting the concession, which was worth $50 per month.

Phillips was required to keep the stand and waiting room open, and to sell tickets continuously, from 7 a. m. to 10:15 p. m. of each day. He was also required to police the waiting room. Whatever else he might do by way of conducting the stand, he was required to be on duty for railway purposes during the stated period. He was on duty for those purposes when he was injured. Therefore he was injured in the course of his employment, if the injury arose out of the employment.

The workmen's compensation act applies to hazardous employments, including employment on a railroad. Defendant's railway is an electric interurban railway. It is included in the definition of "railway" contained in the workmen's compensation act. Employment on railways includes work in depots. (R. S. 44-508.) Therefore, the hazardous nature of the employment and the locality of the accident were not subjects of controversy.

Defendant contends there was no evidence plaintiff's injury was within the workmen's compensation act, because there was no proof the injury originated in anything connected with his employment by defendant. Plaintiff produced some hearsay testimony indicating the station was robbed at the time Phillips was injured, but the testimony may not be considered, and defendant contends any proposed solution of the affair must rest on speculation and conjecture, or must involve the rearing of inference upon inference rather than derivation of inference from established facts.

As indicated, whatever happened, Phillips was on duty, serving defendant according to contract, when he was injured. This is true even if he was injured in an altercation relating to something having

no relation to defendant's business. The employment was such that it invited assault with intent to rob (*Stark v. Wilson, Receiver,* 114 Kan. 459, 219 Pac. 507). The waiting room was a place where robbers did ply their trade, and it was doubtless because of this fact that Phillips kept his money scattered here and there about the place in small sums. The inclosed space in which Phillips' duties required him to be was invaded. The time chosen by the intruder for his appearance in the waiting room was the nighttime, and was a time when the waiting room was not occupied by anyone who gave an alarm. The open door of the candy case suggests that Phillips was lured to the place of assault near the gate by a pretended patron. Those who inspected the place do not refer to any implement of attack or defense which Phillips possessed. He was mortally wounded by repeated blows on the head with some deadly weapon which was not found on the premises. The departing person left the gate open. These circumstances fairly indicate assault with criminal intent, and not merely lawful resistance to an act of aggression by Phillips. What was the nature of that intent—gratification of private grudge by a personal enemy, or the gaining of access to money known to be kept somewhere behind those show cases? While the basis for inference is not entirely satisfactory, the court is unable to say there was no substantial evidence to support the district court's finding that Phillips "was slugged by a bandit while on duty as ticket agent and station keeper for the defendant railway company." The finding being valid, the injury arose out of the employment.

The judgment of the district court is affirmed.