No. 31,326

Eldon F. Covert, *Appellee,* v. John Morrell & Company and
Fidelity & Casualty Company of New York, *Appellants.*

(27 P. 2d 553.)

Opinion filed
December 9, 1933.

*E. H. McVey, C. A. Randolph, Spurgeon L. Smithson, Stanley Garrity* and
*Alfred Kuraner,* all of Kansas City, Mo., for the appellants.

*William C. Perry* and *R. E. McTaggart,* both of Belleville, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action for compensation for an injury
sustained by plaintiff while in defendant's employment.

The claim was denied by the commissioner of workmen's com-
pensation, but upon appeal was allowed by the district court.

Claimant was employed by John Morrell & Company as a travel-
ing salesman. While driving upon the highway near Belleville, the
windshield of his car was broken by a chunk of mud intentionally
thrown from another car. Glass from the windshield was driven
into his eye, causing the loss of sight and necessitating its removal.
He claimed the injury occurred in the course of his employment and
arose out of it, as he was required to travel upon the highway to
reach customers.

As to the time, place and circumstances of the accident it
happened in the "course of employment," such phrase simply mean-
ing that it happened while he was at work in his employer's service.
(*Cox v. Refining Co.,* 108 Kan. 320, 195 Pac. 863.) But to impose
liability upon the employer, the injury must also arise out of the

employment. The compensation act requires that the injury "arise out of and in the course of" the employment. Both elements must be present to justify a recovery. "Arising out of" means that the accident came out of the employment and makes it a condition precedent to the right to recover compensation that the occurrence shall have resulted from the risk reasonably incident to the employment and that there be a causal connection. While not ordinarily essential that it be peculiar to the particular employment in which the workman was engaged at the time of the injury, it must arise out of a risk in some way peculiar to that in which he was engaged and not out of a hazard to which he would be equally exposed outside of the business. Claimant's injury might have been sustained while traveling for his own pleasure as well as while he was in defendant's employment. The employment in no way provoked or invited the attack. Apparently the occupants of the car would have thrown the mud whether or not claimant had been employed by defendant. There was no causal connection as was found in the case of *Stark v. Wilson,* 114 Kan. 459, 219 Pac. 507, where a street-car conductor, while standing on the rear platform operating his car, without fault on his part was stabbed and killed by a passenger. It was there held that robbery is a hazard incident to employment as a street-car conductor, since he is known to be in possession of money, and that an injury inflicted in the perpetration thereof or in an assault provoked by the fact that he was the conductor of the car is compensable, but the court pointed out that—

"The accident must result from a risk naturally and reasonably incident to the employment. The risk must be within rational comprehension as an incident of the employment, and must be one to which the workman would not be equally exposed outside of the employment. It is not enough for the dependents to say the conductor would not have been killed if he had not been at his place on his car at the time he was stabbed. They must say he was killed because he was a street-car conductor on duty, and so was overtaken by a hazard to which performance of his duty exposed him." (p. 462.)

The meaning of the phrase "arising out of" is further distinguished in *Bevard v. Coal Co.,* 101 Kan. 207, 165 Pac. 657, and in *Haas v. Light & Power Co.,* 109 Kan. 197, 198 Pac. 174, and was defined in *Sellers v. Reice Construction Co.,* 124 Kan. 550, 262 Pac. 19, by quoting from McNicol's case, 215 Mass. 497, 498:

" 'It is sufficient to say that an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he

is employed to perform. It "arises out of" the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot be fairly traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " (p. 553.)

The rule was stated that:

"If in any case the cause of injury takes.its rise from something extraneous to the employment, the injury does not arise out of the employment, and recovery should be denied on that ground, not on the ground that the employment is not proximate cause. The problem is usually solved, however, by invoking the doctrine of proximate cause." (p. 554.)

There was a causal connection between the employment and the death of a traveling salesman in the case of *Kennedy v. Hull & Dillon Packing Co.,* 130 Kan. 191, 285 Pac. 536, wherein the claimant while traveling over a highway was killed by contact with a high-voltage wire which had been strung above the highway and was blown down in a storm; the injury from the wire was a hazard of the road to which the employment of the deceased exposed him.

It appears that the injury sustained by claimant was the result of an attack by a third party in no way connected with his employment. Compensation has been denied for injuries inflicted by belligerent workmen and through horseplay. The rule was stated in *Stuart v. Kansas City,* 102 Kan. 307, 171 Pac. 913, quoting from Corpus Juris:

" 'An employee is not entitled to compensation for an injury which was the result of sportive acts of coemployees, or horseplay or skylarking, whether it is instigated by the employee, or whether the employee takes no part in it. If an employee is assaulted by a fellow workman, whether in anger or in play, an injury so sustained does not arise "out of the employment," and the employee is not entitled to compensation therefor, unless in a case where the employer knows that the habits of the guilty servant are such that it is unsafe for him to work with other employees.' " (p. 310.)

This rule was again expressed in *Peavy v. Contracting Co.*, 112 Kan. 637, 211 Pac. 1113, where it was stated that an employee intentionally injured by another employee cannot recover under the workmen's compensation act unless the wrongful conduct has become habitual and the habit is known to the employer. (See, also, 15 A. L. R. 588; 21 A. L. R. 758; 29 A. L. R. 437; 40 A. L. R. 1122 and 72 A. L. R. 110.) It would seem to follow that if a workman cannot recover for injuries intentionally inflicted by a fellow employee over whom the employer presumably has some control, he is not entitled to compensation for malicious injury by a third person in no way connected with the employment and entirely outside the employer's authority, unless there is some circumstance that, by reason of his employment, makes him peculiarly and especially subject to assault. (See *Smith v. Boiler Works Co.*, 104 Kan. 591, 180 Pac. 259; *Stark v. Wilson*, supra; *Phillips v. Kansas City L. & W. Rly. Co.*, 126 Kan. 133, 267 Pac. 4.)

All persons are exposed to the pranks of boys throwing missiles at passing cars and at other objects, movable or stationary, and the claimant was no more exposed to such hazard by virtue of his employment than anyone else. Neither can it be said that this was a hazard of the road. This was not a piece of mud thrown by the wheels of a passing car. It was deliberately thrown, and it might have been thrown at claimant wherever he was. While there seems to be a tendency toward more liberality in recovery with respect to street risks incurred in the course of employment (see note 80 A. L. R. 126), we do not believe that under the facts of this case it should be held, as a matter of law, that the claimant's injuries arose out of his employment.

The judgment of the lower court awarding compensation is reversed, and the cause is remanded with instructions to render judgment for the defendant.

SMITH, J. (dissenting): I find myself unable to concur in the opinion of the majority. I place my dissent on the ground that claimant, as an incident of his employment, was required to travel upon the highways by automobile and was subject to all the risks thereof; a windshield is a necessary part of the automobile; windshields break from a variety of causes and may be broken by a variety of means; it is reasonably to be anticipated that a driver of an automobile may be injured by the breaking of a windshield.

Thus the injury was incidental to the employment and arose out of the employment. Up to this point appellant admits that recovery of compensation is proper, but it bases its entire argument to defeat compensation upon the theory, adopted by the majority opinion, that we are justified in going beyond the breaking of the windshield, and in considering the origin of the force that caused it to break. In considering the question of causation a limit must be placed somewhere. It is conceivable that the chain of causation might be carried back to a point so remote from the employment that compensation would be defeated in every instance. To go beyond the thing that actually caused the injury—in this case the breaking of the windshield—is to adopt a rule which might quite often defeat the very spirit and purpose of workmen's compensation legislation.

This question was decided in the case of *Thom v. Sinclair*, delivered in the House of Lords, [1917] A. C. 127. In that case the applicant was working in a shed packing herring. A brick wall on the adjoining premises fell on the shed and brought the shed down upon the applicant. In allowing the award of compensation Viscount Haldane, Lord Kinnear agreeing, said:

"The expression 'cause' is almost invariably used in a way which lacks precision. In strict logic the cause cannot be pronounced to be less than the sum of the entire conditions. But in ordinary speech and practice we select some one or more out of what is an infinite number of conditions to be treated as the cause. From the practical standpoint of the man in the street the cause of the setting of the house on fire was the striking of a match, while from that of the man of science it was the presence of all the conditions which enabled potential to be converted into kinetic energy. On the other hand, for the court which tries a question of arson the cause is the intention of the accused and any deed done which has accomplished this intention. What, then, is the special point of view which the workmen's compensation act directs us to take in the practical selection of the circumstances which are to determine whether an event has arisen out of the employment which has amounted to injury by accident within the meaning of the act? I think that the court is directed to look at what has happened proximately, and not to search for causes or conditions lying behind, as would be the case if negligence on the part of the employer had to be established." (p. 135.)

The court held they could not go back of what caused the roof to fall. The employee worked under the employer's roof. It fell and the employee was injured. That was enough. This view is not inconsistent with the decision in *Sellers v. Reice Construction Co.*, 124 Kan. 550, 262 Pac. 19, relied upon in the majority opinion, for, as observed by the court in that case, "Sellers was employed to do the construction company's work, not to look after Jacob's car, and

the course of his employment was broken by his voluntary withdrawal to do an act which bore no relation to his employment and which took him away from it." (p. 553.) There is not the slightest analogy in the facts. Operating a car on the highway was not an incident of Sellers' employment. The discussion of causation in the Sellers case is not inapplicable in support of my views. But even conceding that we are justified in looking beyond the breaking of the windshield to the throwing of mud by the boys, I am still of the opinion that the award should be allowed.

In a consideration of workmen's compensation cases we have the so-called "horseplay" cases, those involving injuries from co-employees and from third persons not connected with the employment. We also have those cases involving injuries received on the streets or highways due to the hazards of the street and highway. This case falls definitely within the travel hazard group. Appellant concedes that if the injury was due to a road hazard compensation should be allowed. The great majority of courts treat travel hazards as incidents of the employment of those required to travel, and the weight of authority permits recovery. (Wis. Law Rev., 18, 247.) The following cases establish, in my opinion, that the injury grew from the hazard of the road. This question was passed on in *Schroeder & Daly Co. v. Industrial Comm.*, 169 Wis. 567. There the court said:

"If it should be held that messengers, deliverymen, salesmen and others who by the nature of their employment are required to be continually on the streets and highways, are not entitled to compensation for injuries received in the course of their employment, if the injury occur on a street or highway, a large class of worthy applicants would be cut off and the workmen's compensation law emasculated  .  .  .  The risk of injury to the applicant in this case was incidental to his use of the street in the course of his employment and was peculiar to the employment in that the work of the employee could not be carried on without his subjecting himself to that risk. It therefore grew out of his employment. The fact that others may be exposed to like risks does not change the character of the risk to which the applicant was exposed." (p. 569.)

In *Schmiedeke v. Four Wheel Drive Auto Co.*, 192 Wis. 574, 213 N. W. 292, the court held that where a salesman traveled by automobile, injuries received by him in such travel grow out of and are incidental to his employment within the meaning of the workmen's compensation act. In that case it was said:

"We take it to be well settled that the risks of automobile travel constitute a hazard growing out of and incidental to the employment of a salesman

traveling by automobile. Such is the effect of the holdings in *Schroeder and Daly Co. v. Industrial Comm.*, 169 Wis. 567; 173 N. W. 328, and *U. S. Cas. Co. v. Superior H. Co.*, 175 Wis. 162, 184 N. W. 694; that street hazards to which ordinary salesmen on foot are subjected are hazards peculiar to the employment. Accidents of this kind have almost universally been held to be compensable." (Citing cases.) (p. 577.)

In *London, Etc., Co. v. Industrial Acc. Com.*, 35 Cal. App. 681, 170 Pac. 1074, the injured employee was required to travel from place to place to install machinery. In so doing his car overturned and he was injured. It was argued by the claimant that the case fell within those cases wherein recovery was permitted. In permitting recovery the court said:

"The exceptional cases are those wherein . . . the employee is required to travel from place to place . . . and hence where the risks of such travel are directly incident to the employment itself, and hence wherein the accident occurring by reason of such risks is one arising out of the employment and therefore a proper subject of compensation." (p. 682.)

In *Derleth v. Roach & Seeber Co.*, 227 Mich. 258, 198 N. W. 948, a salesman went to his garage to prepare his car for travel and was killed by monoxide gas poisoning. The court held his death arose out of the employment and permitted recovery.

In *Industrial Com. v. Pueblo Co.*, 71 Colo. 424, a salesman went to the country to effect a sale. In returning to town he invited two strangers to ride. One of them shot the salesman in order to take his car. The court held that an assault for purposes of robbery was a hazard of the road and recovery was allowed.

In *Challis v. London and Southwestern Railway*, 2 K. B. (1905) 154, the circumstances were these: While the deceased was driving a train the eyeglass of the driver's cab on the engine was broken by a stone deliberately thrown by a small boy standing on a bridge. The driver's eyes and face were injured. It was said:

"The interpretation of the words 'accident arising out of employment' appears to me necessarily to involve the consideration of the question, what risks are commonly incidental to the particular employment in question? The cases relied upon by the respondents are not, in my opinion, inconsistent with the view that such an accident as occurred in the present case is within the act. On the contrary, they appear to me to be rather in favor of that view."

"(Cozens, Hardy, L. J.) : In my opinion, the county court judge was wrong in thinking that what happened in this case could not be an accident within the act, because it was a result of a tortious act willfully committed by some person in throwing the stone from the bridge."

"Matthew, L. J., in agreeing, said: The argument for the respondents really involved the reading into the act of a proviso to the effect that an accident shall not be deemed to be within the act if it arose from the mischievous act of a person not in the service of the employer. I see no reason to suppose that the legislature intended so to limit the operation of the act. The result is the same to the engine driver, from whatever cause the accident happened, and it does not appear to me to be any answer to the claim for indemnification under the act to say that the accident was caused by some person who acted mischievously." (pp. 157-159.)

In *Levchuk v. Krug Cement Co.*, 246 Mich. 589, 225 N. W. 559, a bird hit the windshield of an automobile, breaking it and putting out the driver's eye. The court evenly divided on whether compensation was due. In commenting on the case in 8 Wisconsin Law Review 246, it is said:

"Such an injury may be conceded to be unusual and not to be anticipated. On the other hand, the risk, though not great, was directly attributable to the operation of the car and even peculiar to it. It was therefore a travel risk, and where the employment subjects a worker to travel he should be entitled to recover for injuries directly due to such travel, whether they be common or unusual."

Other cases where recovery was allowed, to mention a few, are: *Frigidaire Corp. v. Industrial Acc. Com.*, 103 Cal. App. 27, 283 Pac. 974, where a traveling salesman, waiting on a station platform, was struck by a stray bullet; *Wold v. Chevrolet Motor Co.*, 147 Minn. 17, 179 N. W. 219, where an employee was killed by a sheriff's posse in attempting to stop his car; *Widman v. Murray Corp.*, 245 Mich. 332, 222 N. W. 711, where injury to an eye from cinders on a train was considered a travel hazard; *Schmiedeke v. Four Wheel Drive Auto Co.*, 192 Wis. 574, 213 N. W. 292, where automobile overturned. Appellant makes the distinction that in the above case the injury was not intentional. But, as pointed out in *Challis v. London and Southwestern Railway*, supra, the result is the same to the injured employee. For that matter the injury in the instant case was not intentional. It may have resulted indirectly from negligence, just as the policeman firing the stray shots may have been negligent. (For further review of cases see 80 A. L. R. 127; 49 A. L. R. 454; 29 A. L. R. 120; and 8 Wis. Law Rev. 134, 217.)

Courts have allowed compensation in cases where an outside agency operating upon the traveler actually inflicted the injury, as where a tree or pole is blown down upon the traveler. (*Globe Indemnity Co. v. MacKendree*, 39 Ga. App. 58, 146 S. E. 46, affirmed

in 169 Ga. 510, 150 S. E. 849; *Lawrence v. Matthews*, [1929] 1 K. B. 1.) Why, then, should we not permit compensation where, as here, the injury is inflicted by the instrumentality of travel itself? Our own case of *Kennedy v. Hull & Dillon Packing Co.*, 130 Kan. 191, 285 Pac. 536, falls definitely within this class and affords ample precedent for recovery herein. In this case Kennedy was a traveling salesman for a packing company. In traveling upon the highways he came in contact with an electric wire which had been thrown across the highway by a storm. Compensation was allowed. The majority opinion points out that in the Kennedy case there was a causal connection between the injury and employment, and that "the injury from the wire was a hazard of the road to which the employment of the deceased exposed him." In my judgment there is more reason for recognizing a causal connection between injury and employment, and for application of the road hazard theory in this case than in the Kennedy case. The injury here was due to the breaking of the windshield, a hazard constantly confronting claimant and one obviously incidental to his employment. Appellant argues that to reach this conclusion we must assume that boys throw mud at nothing but motor cars. This does not follow. The rule in negligence cases is in point here. It is not necessary that the particular facts causing the windshield to break be anticipated; it is sufficient if it might reasonably be assumed that some injury might result from riding day in and day out behind a piece of glass.

The majority opinion states and appellant argues that the injury arose out of a risk "to which he would be equally exposed outside of the business" and points out that the boys might have thrown mud at claimant wherever he was (which of course would not have been serious except for the windshield). In view of the foregoing I think it is clear the argument has no application. But in any event, that rule is not so well established nor of such controlling force as the majority opinion would indicate. Thus in matter of *Katz v. Kadans & Co.*, 232 N. Y. 420, it was said:

"If the work itself involves exposure to perils of the street, strange, unanticipated and infrequent though they may be, the employee passes along the streets when on his master's occasions under the protection of the statute. This is the rule unequivocally laid down by the House of Lords in England . . . The fact that the risk is one to which everyone on the street is exposed does not itself defeat compensation. Members of the public may face the same risk every day. The question is whether the employment ex-

posed the workman to the risks by sending him on to the street, common though such risks were to all on the street." (pp. 421, 423.)

In that case a chauffeur was stabbed by an insane man running amuck on the streets and stabbing all he met. The court held the accident was a street hazard and permitted recovery.

Lord Finlay, in the House of Lords, in *Dennis v. A. J. White and Company*, (1917) A. C. 479, elaborated on this question as follows:

"It is quite immaterial that the risk was one which was shared by all members of the public . . . Such as it was, it was a risk to which the appellant was exposed in carrying out the orders of his employer . . . 'the fact that the risk may be common to all mankind does not disentitle a workman to compensation if in the particular case it arises out of the employment' . . . It was said that the same accident might have befallen any member of the public who chanced to be riding a bicycle on that road at that time. That is true, but irrelevant. The statute recognizes no such distinction. If the distinction were sound, then the vast majority of workmen would be deprived of the benefits of this act, because they in the course of and arising out of their daily employment, encounter the very same risks which are faced every day by members of the public. Members of the public do not recover compensation because either they are not employed or the accident happened when they were not in the course of their employment." (pp. 481, 482, 484.)

See, also, *Bookman v. Lyle Culvert & R. E. Co.*, 153 Minn. 479, where a stenographer who crossed a street to mail a letter and was struck by a passing automobile could recover as for an injury due to a hazard of the employment; *McDonald v. Gulf Refining Co.*, 98 Conn. 286, where recovery was permitted to a watchman whose duties included feeding a dog on the premises was struck while crossing the street to obtain food.

As previously pointed out, the question here is whether the injury was one arising out of employment. The words "out of" convey the idea that the accident is in some sense due to the employment. (*Haas v. Light & Power Co.*, 109 Kan. 197, 198 Pac. 174.) Under the theory of the road-hazard cases if travel upon the highways is an incident of the employment, almost any injury, especially if the injury is caused by or in some way is occasioned by the instrumentality of travel, arises out of employment and is compensable. The origin of the bullet or the force causing the tree or pole or wall to fall or the windshield to break, are of little consequence. (*Lawrence v. Matthews*, [1929] 1 K. B. 1.)

The primary purpose of the compensation act was to shift the burden of industrial accidents from the employee to the employer

and thence to the consuming public (*McRoberts v. Zinc Co.*, 93 Kan. 364, 144 Pac. 247), and in deciding whether a particular injury is compensable, we must give the term "arising out of" a broad and liberal interpretation so as to effectuate this purpose. Any doubt respecting the right to compensation should be resolved in favor of claimant. (*Palmer v. Fincke*, 122 Kan. 825, 253 Pac. 583; *Roberts v. City of Ottawa*, 101 Kan. 228, 165 Pac. 869; *Chandler v. Industrial Com.*, 55 Utah 213, 184 Pac. 1020; *Brady v. Oregon Lumber Co.*, 117 Ore. 188, 243 Pac. 96; 28 R. C. L. 792.) The tendency of late decisions is to become more liberal. (See 1 Schneider's Workmen's Compensation Law, ¶ 262.)

To deny compensation in this case is to turn the clock back twenty-two years and in effect to annul the policy of liberal construction which is the very spirit of workmen's compensation legislation.

I am authorized to say that Mr. Chief Justice Johnston joins in this dissent.

HUTCHISON, J., not sitting.