No. 46,739

Pearl Craig, Widow and Dependent of Clement Edward Craig, *Appellee*, v. Electrolux Corporation and Reliance Insurance Company, *Appellants*.

(510 P. 2d 138)

Opinion filed May 12, 1973.

*Richmond M. Enochs*, of Wallace, Saunders, Austin, Allen, Brown & Enochs of Overland Park, argued the cause, and was on the brief for the appellants.

*Charles L. Davis, Jr.*, of Gray, Freidberg, Davis & Unrein, of Topeka, argued the cause, and *Kenneth E. Arnold*, of Kansas City, Missouri, was with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: Respondents appeal from a workmen's compensation award in favor of an employee's widow. The principal question on appeal is whether the death of the employee arose "out of" the employment.

Clement Edward Craig, the deceased employee, had been employed by Electrolux Corporation for about two years. He and another employee, Barney Jones, handled commercial accounts which required them to make calls in the evening. In addition to selling the company's product, one of their duties was to collect money from customers who had entered into installment contracts with the company.

On the evening of December 9, 1967, Craig told his wife, his daughter, and Barney Jones that he was going to Kansas City, Kansas, to try to make some sales. Prior to December 9, Craig had been attempting to sell his employer's product to Fred Earnhart, an apartment manager whose office was in the apartments located at 1629 Washington, Kansas City, Kansas. Craig parked his car in a tenant's stall and remained in the car for some time waiting for Earnhart. This was a Saturday and Earnhart's office was usually open until 1:00 or 1:30 p. m.

As Craig was waiting in the parking lot, two males approached his car. One of them pointed a gun at him, and shot and killed him. The two males immediately ran from the scene, but both were apprehended and charged with murder in the first degree. One of the males, Dennis Eugene Smith, pled guilty to the charge.

At Smith's preliminary hearing on the criminal charge, the court found there was probable cause to charge Smith with first degree homicide in the perpetration of another crime, robbery. This decision was based on the testimony of Smith's confidant, who said Smith admitted they had seen the victim earlier in the evening with a great deal of money, admitted the shooting, and admitted it happened as they were trying to rob the victim.

We approach this action recognizing several frequently stated rules applicable to workmen's compensation appeals. The purpose of the act is to burden industry with the economic loss to a workman, or his dependents, resulting from accidental injuries sustained by the workman, arising out of and in the course of his employment. (*Thuillez v. Yellow Transit Freight Lines*, 187 Kan. 618, 358 P. 2d 676.) The provisions of the workmen's compensation act are to be

liberally construed in favor of the workman and compensation awarded where it is reasonably possible to do so. (*Odell v. Unified School District*, 206 Kan. 752, 481 P. 2d 974.) On appeal, this court's jurisdiction in compensation cases is limited to questions of law and if there is substantial competent evidence to support the findings of the lower court, the findings must stand. (*Ratzlaff v. Friedeman Service Store*, 195 Kan. 548, 407 P. 2d 513.)

K. S. A. 44-501 (now K. S. A. 1972 Supp. 44-501) provides for compensation for "personal injury by accident arising out of and in the course of employment." Respondents do not deny the accident resulting in employee's death arose "in the course of" his employment. The issue is confined to whether the accident arose "out of" the employment.

The Examiner denied compensation and stated:

"The Examiner further finds that the deceased's being shot or having sustained his accidental injury did not arise out of his employment with the respondent. The respondent and insurance carrier having denied that the accidental injury of the deceased arose out of and in the course of his employment with the respondent, the burden was upon claimant to establish, by evidence, the connection of the death of the deceased with the employment. Such a connection may not rest on mere surmise or conjecture. Proof of the shooting of Clement Edward Craig, the deceased, for no known reason or motive, without more, fails to meet the statutory requisite that the death arose out of his employment and, therefore, an award of compensation must be denied."

On review by the Director, the Examiner's findings were sustained. The district court reversed the Examiner and Director and awarded compensation, stating:

". . . [T]he parties made their respective arguments for appeal and the District Court of Wyandotte County, Kansas, adopts the findings of the Examiner and affirmed by the Workmen's Compensation Director with the exception that the Court finds that the deceased's accidental injuries arose out of his employment with the respondent."

Respondents argue the district court erred as a matter of law in finding deceased's murder arose out of his employment when all evidence shows deceased was murdered by two individuals who were completely unrelated to deceased's employment. Respondents point out there was no testimony that the two individuals attempted to rob deceased. They further state deceased's employment with Electrolux in no way provoked or invited his murder. They conclude there is a known assailant, but this known assailant for no known reason or motive, shot and killed deceased in a manner

completely unrelated to his employment; and there can be no question his death did not arise out of the employment.

Claimant argues Craig was obviously waiting for the return of a potential client when he was assaulted. One of his duties was to make collections on installment contracts with commercial clients such as hotels, motels, and apartments, which obviously are large accounts. On the same day, at least one of his assailants saw him with a large sum of money and planned to rob him. This fact was admitted by the assailant, and there was enough evidence on this specific issue for the judge at Smith's preliminary hearing to charge him with first degree homicide in the perpetration of another crime, robbery. The intent to rob was obviously formed only because Craig was observed with a large sum of money which in all likelihood was the result of his collections. His assailants took off as soon as Craig was shot, which could easily be attributed to panic, their youthful age, or the sighting of potential witnesses. In any event, claimant argues there is absolutely no evidence to show the assault was for personal reasons. It was due to the fact his assailants knew he had a large sum of money—money which Craig had collected for his employer. Claimant contends this condition of his work, collecting and holding large sums of money, was the definite cause of the assault on Craig.

Both parties cite and rely on *Siebert v. Hoch*, 199 Kan. 299, 428 P. 2d 825, to sustain their position and we believe what was said in *Siebert* controls the disposition of this case. Siebert met death while employed as manager of a distribution dairy in Topeka, which business consisted of house-to-house delivery of milk and operation of a retail store. Siebert's wife was employed there as a bookkeeper, but on Wednesday preceding Siebert's death she separated from him and did not thereafter perform her usual duties. The separation of the Sieberts resulted from an argument between them and a beating deceased gave his wife. Jim Siebert, brother of deceased, also an employee of the dairy company in another town, had seen the beating and told Mrs. Siebert he was mad enough to kill his brother.

On the fatal night, Siebert closed the store about 10:30 p. m., went home, and later returned to the store to get ready for the morning deliveries. The following morning he was found dead lying on the couch in his office. Cause of death was a .22 caliber slug in his left temple. Siebert owned a .22 caliber pistol and his brother, Jim, knew where it was kept. Cash receipts were in the safe and

Siebert's wallet containing $100.00 was not taken. There was no evidence of any forcible entry into the building.

The trial court granted an award and on appeal this court reversed. We stated the following principles of law:

"The two phrases, arising 'out of' and 'in the course of' the employment, as used in our workmen's compensation act (K. S. A. 44-501), have separate and distinct meanings, they are conjunctive and each condition must exist before compensation is allowable." (Syl. ¶ 1.)

"The phrase 'out of' the employment points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. An injury arises 'out of' employment when there is apparent to the rational mind, upon consideration of all the circumstances a causal connection between the conditions under which the work is required to be performed and the resulting injury." (Syl. ¶ 3.)

"An injury arises 'out of' employment if it arises out of the nature, conditions, obligations and incidents of the employment." (Syl. ¶ 4.)

"The foregoing tests exclude an injury not fairly traceable to the employment and not [sic] coming from a hazard to which the workman would have been equally exposed apart from the employment." (Syl. ¶ 5.)

"Assaults for private reasons do not arise out of the employment unless, by facilitating an assault which would not otherwise be made, the employment becomes a contributing factor." (Syl ¶ 7.)

We also pointed out the burden of proof was on the claimants to show the employment brought Siebert in contact with an increased risk which in fact caused his death. The increased risk, if any, had to be related to burglary. Since nothing was stolen and the intent of the unknown assailant could not be ascertained, no proof was available for linking burglary and resulting assault to Siebert's employment.

The case at bar is distinguishable from *Siebert* in that one of the assailants saw Craig with a large sum of money and planned to rob him. One of Craig's duties was to make collections and carry substantial sums of money with him. Although no actual robbery occurred there was an intent to rob. No showing of personal animosity existed toward Craig as in *Siebert,* and under the circumstances a conclusion that robbery was intended is justified. The intent to rob, coupled with the fact Craig was required to carry substantial monies, creates the causal connection between the murder and the employment.

We find support for this position in *Phillips v. Kansas City, L. & W. Rly. Co.,* 126 Kan. 133, 267 Pac. 4. This case involved the assault and slaying of a ticket agent who was also operating a concession stand under agreement with the railroad. It was disclosed that

during the two-year period Phillips had acted as agent of the company the ticket office had been robbed four or five times. The assailants were unknown and money was found on the ticket agent's person and in an open case after the assault. The court, even though lacking many facts, found the deceased to have been on duty at the time of the assault and found the conditions of the employment almost invited robbery. In awarding compensation the court said:

". . . These circumstances fairly indicate assault with criminal intent, and not merely lawful resistance to an act of aggression by Phillips. What was the nature of that intent—gratification of private grudge by a personal enemy, or the gaining of access to money known to be kept somewhere behind those show cases? While the basis for inference is not entirely satisfactory, the court is unable to say there was no substantial evidence to support the district court's finding that Phillips 'was slugged by a bandit while on duty as ticket agent and station keeper for the defendant railway company.' The finding being valid, the injury arose out of the employment." (p. 138.)

Respondents cite *Covert v. John Morrell & Co.*, 138 Kan. 592, 27 P. 2d 553, which involved injury to an eye caused by glass from a broken windshield. The windshield was broken by mud intentionally thrown from another car. The court denied compensation, stating:

". . . While not ordinarily essential that it be peculiar to the particular employment in which the workman was engaged at the time of the injury, it must arise out of a risk in some way peculiar to that in which he was engaged and not out of a hazard to which he would be equally exposed outside of the business. Claimant's injury might have been sustained while traveling for his own pleasure as well as while he was in defendant's employment. The employment in no way provoked or invited the attack. Apparently the occupants of the car would have thrown the mud whether or not claimant had been employed by defendant. . . ." (p. 593.)

Although compensation was denied, *Covert* is easily distinguishable from the facts in this case. Here, we have an employee who is required to carry large sums of money. This requirement of his employment made him more susceptible to robbery than one not required to do so. He would not have been equally exposed to robbery outside his employment.

Although a robbery was not involved, we adhered to the principles of law set forth in *Siebert*, in *Brannum v. Spring Lakes Country Club, Inc.*, 203 Kan. 658, 455 P. 2d 546.

From the outset of hearings on this compensation claim, and as its second point on appeal, respondent contends no written claim for compensation was made to employer in compliance with K. S. A. 44-520a (1) (now K. S. A. 1972 Supp. 44-520a [1]), which states:

"(1) No proceedings for compensation shall be maintainable hereunder unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or his duly authorized agent, or by delivering such written claim to him by registered or certified mail. . . ."

Whether technical non-compliance with procedural requirements is to be allowed to defeat an otherwise meritorious claim is often litigated in connection with administrative procedures. The issue is well set forth in 3 Larson's Workmen's Compensation Law, § 78.10, § 78.11:

"The adjective law of workmen's compensation, like the substantive, takes its tone from the beneficent and remedial character of the legislation. Procedure is generally summary and informal. The initial handling of claims, and perhaps the first review, are administrative in all but a few states. The whole idea is to get away from cumbersome procedures and technicalities of pleading, and to reach a right decision by the shortest and quickest possible route. On the other hand, as every lawyer knows, there is a point beyond which the sweeping-aside of 'technicalities' cannot go, since evidentiary and procedural rules usually have an irreducible hard core of necessary function that cannot be dispensed with in any orderly investigation of the merits of a case. The question that constantly recurs in a survey of the procedural side of workmen's compensation is whether, in any particular case involving a loss of benefits for procedural reasons under an otherwise meritorious claim, the indispensability of the procedural purpose so served outweighs the thwarting of the protective functions of the act.

"Even under a statute that specifically requires the filing of a claim, most courts will accept as the equivalent of a statutory claim any paper that contains the substance usually supplied by a formal claim, although the form may be defective. . . ." (pp. 2, 3.)

Claimant sent to respondent by certified mail completed form E-2, entitled "Dependent's Application for Hearing." The following information is contained in that completed form: name of employee, name of claimant and her relation to deceased employee, name of employer or respondent and its insurance company, date of accident, including approximate hour of accident, place of accident, statement of how accident occurred, date of employee's death, date employer was informed of accident and death, amount for which claimant was dependent upon deceased, average weekly wage of deceased employee at time of accident, and amount of funeral expenses. The form was signed by the claimant, Pearl Craig.

The Examiner, the Director, and district court, while differing upon the issue of whether the employee's death arose out of his employment, were unanimous in their finding at all stages of the proceedings that the form E-2, completed and sent to respondent, was sufficient to constitute a written claim for compensation.

Respondents rely upon the following statement in bold print at the bottom of the form: "Dependent Requesting a Hearing Should File This Application With the Director. This Is an Application for Hearing Only and Is Not a Claim for Compensation."

The purpose of the requirement for a written claim is to enable the employer to know about the injury in time to investigate it. (*Weaver v. Shanklin Walnut Co.*, 131 Kan. 771, 293 Pac. 950.) In *Eckl v. Sinclair Refining Co.*, 133 Kan. 285, 299 Pac. 588, the claimant and his wife merely wrote letters to the company concerning his injury and amounts spent for substitute labor, and the court held the reasonable interpretation of those letters was that claimant wrote them seeking compensation for his injury.

In *Fitzwater v. Boeing Airplane Co.*, 181 Kan. 158, 309 P. 2d 681, we held the *intent* of the parties is to be considered in determining the sufficiency of a writing to constitute a claim for compensation, stating:

"In determining whether or not a written instrument is in fact a claim the court will examine the writing itself and all the surrounding facts and circumstances, and after considering all these things, place a reasonable interpretation upon them to determine what the parties had in mind. The question is, did the employee have in mind compensation for his injury when the instrument was signed by him or on his behalf, and did he intend by it to ask his employer to pay compensation?" (p. 166.)

In *Magers v. Martin Marietta Corporation*, 193 Kan. 137, 392 P. 2d 148, the claimant filed an "Application for Hearing and Claims for Compensation" with the workmen's compensation director. The director then notified the employer and insurance company of the date set for the hearing. No "claim" for compensation was served. The court held this filing was sufficient, stating:

"We agree that what was done in this case amounted to the commencement of proceedings for compensation. The claimant executed an application for hearing and claim for compensation on the form prescribed by the director pursuant to G. S. 1949, 44-534 for use in applying for a determination of compensation claimed to be due. This application was received by the director who thereupon set the application for hearing and notified the respondent thereof. No additional steps would seem necessary to 'commence' proceedings." (p. 143.)

It is difficult to imagine a writing more clearly intended as a demand for compensation than an application for a hearing on the question of compensation. Obviously, the same information on another piece of paper would constitute an adequate claim for compensation. We, therefore, refuse respondent's contention that

printed words on the bottom of a form can defeat the intent of decisions of this court that a claim for compensation can be any writing so intended by the claimant.

Affirmed.