No. 66,720

BOBBIE J. ANGLETON, widow, and mother and natural guardian of Emily A. Angleton, *Appellee/Cross-appellant*, and JUDY LEA FULPS, mother and natural guardian of Everett W. Angleton and Melinda Lee Angleton, children of deceased, *Appellees*, v. STARKAN, INC., *Appellant/Cross-appellee*, and UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant/Cross-appellee*.

(828 P.2d 933)

Opinion filed April 10, 1992.

*Duncan A. Whittier,* of Palmer, Whittier, Ash & Kennard, of Pittsburg, argued the cause and was on the brief for appellants/cross-appellees.

*Daryl D. Ahlquist,* of Hines, Ahlquist & Creitz, P.A., of Erie, argued the cause and was on the brief for appellees.

*R. Kent Pringle,* of Coombs & Pringle, of Chanute, argued the cause and was on the brief for appellee/cross-appellant Bobbie J. Angleton.

The opinion of the court was delivered by

HERD, J.: This is a workers compensation case. The children and widow of Delbert Wayne Angleton filed workers compensation claims against his employer, Starkan, Inc. (Starkan) following Angleton's death. The district court held Angleton's three minor children were entitled to compensation, but his wife's claim

was barred by the statute of limitations. Starkan appeals from the district court decision, and Angleton's widow cross-appeals.

The facts from which this controversy arose follow: Delbert Wayne Angleton was employed as a truck driver by Starkan on February 4, 1984. On that date, Angleton was hauling a load of cattle from South Coffeyville, Oklahoma, and Cedar Vale, Kansas, to a feedlot in Leoti, Kansas. Angleton never arrived at the feedlot in Leoti. Instead, Angleton was murdered by Gary Lee Hall and his wife, Roberta.

Gary and Roberta Hall were ranchers and truckers from Oregon. On or about January 26, 1984, the Halls transported a load of apples from Oregon to Houston, Texas. The load of apples was unloaded on or about January 29, 1984. The Halls then headed back to Oregon, going through western Kansas along the way, hoping to find a load for the return trip. Their intended method of obtaining the return load was a bit unusual. They intended to hijack a truck with a load. The Halls spent some time in the Dodge City and Oakley areas, where they followed several trucks for the purpose of carrying out their hijacking scheme, but for various reasons the loads they saw did not meet their criteria.

Things changed on the morning of February 5, 1984. The hijackers spotted Angleton with his load of cattle in the Garden City area. They followed him in their truck as he drove north toward Scott City. The Halls had found the truck and load they wanted for their return trip. While Roberta drove, she struck up a conversation with Angleton on the citizens' band radio. Roberta later testified she asked Angleton to pull over to smoke marijuana with her. Angleton then followed the Halls' truck as Roberta pulled off the highway into a deserted service station in front of an abandoned refinery. Roberta testified Angleton got into the Halls' truck and, while smoking a marijuana cigarette, was shot in the back of the head by Gary, who feigned to be sleeping in the sleeper cab.

According to Roberta, the shots killed Angleton instantly. The Halls covered his body with a sleeping bag, and they then took both trucks. In Wyoming, the Halls switched truck loads and hauled the cattle to Oregon, where they were unloaded at the Halls' ranch. Several of the cattle had died due to lack of food

and water. They were buried in a pit, along with Angleton's body, on the Halls' ranch. The remaining cattle were subsequently branded with the Halls' brand and sold. Angleton's truck was found in Wyoming a couple of weeks after his disappearance.

Following Angleton's disappearance, his wife Bobbie Angleton attempted to locate him. She contacted the Highway Patrol in Wichita, the Kansas Bureau of Investigation, and other truck drivers who knew Angleton. The K.B.I. believed Angleton had stolen the truck and cattle and, therefore, issued a warrant for his arrest.

In early March 1987, Roberta, who was divorced from Gary in 1985, told authorities of Angleton's death and the circumstances surrounding it. This led to the discovery of Angleton's body on March 8, 1987. Roberta was granted immunity by the authorities for her testimony against Gary, who was charged with and convicted of first-degree murder in Scott City, Kansas. The facts of the murder case are summarized in *State v. Hall*, 246 Kan. 728, 731-38, 793 P.2d 737 (1990).

Angleton's widow and his three minor children filed a claim for workers compensation on August 14, 1987. Following a hearing on October 18, 1988, before a Workers Compensation Administrative Law Judge, a decision was issued on February 7, 1990. The Administrative Law Judge made the following findings:

"At the time that the deceased employee accepted the invitation of Roberta Hall to 'smoke a joint', the deceased employee deviated from his employment with the respondent, and at that time was on a 'frolic of his own'.

"2. The claimants have not proved by a preponderance of credible evidence that the death of Delbert Wayne Angleton arose out of and in the course of his employment with the respondent. . . .

"3. . . . [I]mmediately after the body was found on March 8, 1987, Mrs. Angleton was notified as was the employer. Notice is found to have been promptly given following discovery of the body, and no prejudice has been found to have resulted to the respondent as a result of that delayed notice.

"4. . . . Based upon the record made in this matter as well as the circumstances, it is found that the claimants' claim or claims for compensation were timely made and served upon the respondent."

Based upon these findings and others, the Administrative Law Judge denied all claimants' requests for compensation.

Bobbie Angleton and the children as well as Starkan and its insurance carrier applied for a director's review of the award

entered by the Administrative Law Judge. Assistant Director William F. Morrissey entered his order on June 7, 1990. The order states in part:

"The employer and the claimants learned of the circumstances of Mr. Angleton's death at approximately the same time. Respondent [Starkan] suffered no lack of notice from claimant and therefore no prejudice.

. . . .

"The fact that the deceased was smoking a marijuana cigarette seems to be the only factor which lays a basis for determining that the decedent had left the course of his employment. Had the deceased been invited to pull off the road by another male driver at a truck stop for the purpose of having a cup of coffee and been killed in the process, this claim would have, no doubt, been recognized as compensable.

". . . The deceased's departure from his course of travel was so de minimus that it cannot constitute a deviation from his employment.

"Clearly, the motivation for the attack upon the decedent arose out of the course of his employment. The evidence is clear that the attackers did not know the deceased. Their sole purpose in their attack upon him was to steal his load of cattle. [Citation omitted.]

"Based upon the above, it is found that the fatal injury of the deceased, Delbert Wayne Angleton, was caused by personal injury by accident which arose out of and in the course of his employment with respondent [Starkan] on February 5, 1984."

Ultimately, the Assistant Director held that because Bobbie Angleton did not give Starkan a "written claim for compensation within one year of the date of the accident or death and did not file application for hearing within three years of the date of accident, compensation for the surviving spouse, Bobbie J. Angleton, must be denied." The Assistant Director also held the three minor children were entitled to compensation and awarded compensation at the rate of $218 per week to be divided equally among the children. Additionally, funeral expenses not to exceed $3,200 were awarded.

On August 20, 1990, Bobbie Angleton petitioned the Scott County District Court for judicial review of the Assistant Director's order. The case was transferred to Neosho County District Court and argued on December 20, 1990. The district court made its ruling by telephone conference call on March 29, 1991, and journalized its decision on May 7, 1991. The district court's journal entry affirmed the Assistant Director's order in all respects. The district court judge during the telephone conference call

stated he found Roberta Hall's testimony "inherently unreliable." When questioned further by Starkan's attorney about his findings on whether Angleton was smoking marijuana at the time of his death, the district court judge responded:

"I'm saying there—I'm not ruling on whether or not it was a deviation. Well, I guess I can because I have resolved that in my mind to the extent that if the circumstances were as testified to by Roberta Woodward [Hall], I don't believe that would be a sufficient deviation and I would sustain the Director in that regard as well.

"But, again, that finding is somewhat moot because I have found that there is no good cause to believe that he was in fact smoking marijuana."

Starkan and its insurance carrier appealed the district court's decision. Bobbie Angleton cross-appealed.

I.

Starkan raises two issues on appeal which are so interrelated we treat them as one issue. Starkan argues the district court erred in finding that the incident which resulted in Angleton's death arose out of and in the course of his employment and that the finding was not supported by substantial competent evidence.

Our scope of appellate review for workers compensation cases is the same as the scope of review in other civil cases. K.S.A. 77-623. This court must view the evidence in the light most favorable to the prevailing party. If the district court's findings of fact are supported by substantial competent evidence, this court is bound by those findings. We have jurisdiction to review all questions of law. *Craig v. Electrolux Corporation*, 212 Kan. 75, 77, 510 P.2d 138 (1973); *Jones v. City of Dodge City*, 194 Kan. 777, 779, 402 P.2d 108 (1965). In addition, it is the duty of the courts, district and appellate, to liberally construe the workers compensation statutes "to effect legislative intent and award compensation to the worker where it is reasonably possible to do so." *Poole v. Earp Meat Co.*, 242 Kan. 638, 643, 750 P.2d 1000 (1988).

We have defined the term "substantial evidence" in the context of workers compensation cases to mean "evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved." *Jones v. City of Dodge City*, 194 Kan. at 779.

Starkan contends the claimants should not be awarded compensation because Roberta Hall testified Angleton was smoking marijuana with her at the time of his death and, therefore, his death did not arise out of and in the course of his employment. For support, Starkan cites several federal regulations governing commercial drivers as well as K.S.A. 8-1567. These regulations and K.S.A. 8-1567(a)(4) prohibit a person from operating a vehicle while under the influence of drugs. See 49 C.F.R. §§ 383.51, 391.95, and 392.4 (1991). There is a flaw in Starkan's logic. It overlooks the fact Angleton was not operating his truck at the time of his death. The Workers Compensation Act provides the employer is not liable if the employee's "death was *substantially caused* by the employee's use of any drugs, chemicals or any other compounds or substances, including but not limited to, any form or type of narcotic drugs, *marijuana*, stimulants, depressants or hallucinogens" unless they are prescribed for the treatment of an illness by a health care provider. (Emphasis added.) K.S.A. 1991 Supp. 44-501(d). Even if we assume Angleton was smoking marijuana, that alone does not justify denying compensation. Angleton's death must be substantially caused by his alleged drug use before compensation can be denied or he must have deviated sufficiently from his employment to be off the job at the time of his death.

Pursuant to K.S.A. 1991 Supp. 44-501(a), if an employee is injured "by accident arising out of and in the course of employment . . . the employer shall be liable to pay compensation to the employee." This court has construed the phrases arising "out of" and "in the course of" employment many times. We have stated:

"The two phrases, arising 'out of' and 'in the course of' the employment, as used in our workmen's compensation act (K.S.A. 1972 Supp. 44-501), have separate and distinct meanings, they are conjunctive and each condition must exist before compensation is allowable. The phrase 'in the course of' employment relates to the time, place and circumstances under which the accident occurred, and means the injury happened while the workman was at work in his employer's service. The phrase 'out of' the employment points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. An injury arises 'out of' employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions

under which the work is required to be performed and the resulting injury. An injury arises 'out of' employment if it arises out of the nature, conditions, obligations and incidents of the employment." *Newman v. Bennett,* 212 Kan. 562, Syl. ¶ 1, 512 P.2d 497 (1973).

See *Craig v. Electrolux Corporation,* 212 Kan. 75; *Siebert v. Hoch,* 199 Kan. 299, 428 P.2d 825 (1967).

Temporarily ignoring the testimony regarding the marijuana use, let us consider whether the accident causing Angleton's death arose out of and in the course of his employment. At the time of his death, Angleton was en route to deliver his load of cattle to the feedlot in Leoti. Angleton was making this trip at the direction of his employer, Starkan. He was on the direct route to his designated destination, Leoti. Angleton would not have been driving on this route near Scott City on February 5, 1984, had it not been for his job. If Angleton had not been hauling a valuable load for Starkan, he and his truck would not have caught the attention of Gary and Roberta Hall, who were looking for a truck to hijack, and his death would not have occurred. Clearly the accident occurred in the course of Angleton's employment.

Next, Angleton's death arose out of his employment if there is a rational causal connection between the conditions under which the work is required to be performed and the resulting injury. At the time Angleton pulled off the highway, he was driving his load to Leoti in fulfillment of his employment obligations. The Halls spotted Angleton's truckload of cattle and decided to hijack it. Once Roberta convinced Angleton to stop, Gary shot him in order to carry out their plan to steal the cattle. There is no evidence in the record indicating Angleton was killed for any personal reason. In fact, it is clear he was killed because he was responsible for the Starkan truck and cattle.

If employment exposes the worker to an increased risk of injury of the type actually sustained, the employer is liable for compensation. Transporting valuable cargo for Starkan increased Angleton's chances of being robbed while on the highway more so than if he were driving a passenger car for his own purpose or pleasure. Based upon this, we hold that absent the alleged marijuana episode, Angleton's death arose out of his employment.

This conclusion is in keeping with our holdings in other cases. For example, in *Craig v. Electrolux Corporation,* 212 Kan. 75,

an employee was shot and killed while waiting in a parking lot for a potential client. The employee's duties included collecting payments, and he had been observed with a large sum of money by his assailants earlier in the day. The evidence proved the employee was shot because the assailants planned to rob him, although they did not carry out that plan. We held the employer was liable for compensation to the employee's widow because the nature of the work increased the risk which in fact caused his death.

In contrast, in *Siebert v. Hoch*, 199 Kan. 299, an employee was shot and killed while he slept on a couch in the employer's business office. The evidence did not indicate the crime occurred during an attempted burglary, and the employee's widow failed to prove the death was in any way connected to the employee's work. Thus, compensation was denied.

Now, let us examine the question of whether the evidence concerning the marijuana use changes our conclusion that the accident resulting in Angleton's death arose out of and in the course of his employment. Compensation would not be denied if Angleton had stopped to have a cup of coffee or a meal or to assist another trucker who claimed to be having mechanical difficulty. Roberta, however, testified Angleton pulled off the highway because she invited him to smoke marijuana. The district court judge found this testimony to be unreliable and stated, assuming it was true, Angleton's behavior was insufficient to amount to a deviation justifying denial of compensation.

Bobbie Angleton testified she had never known her husband to smoke marijuana. According to Bobbie, her husband had had "chemical pneumonia" that would have kept Angleton from smoking marijuana. Starkan contends Bobbie's testimony is self-serving and should be given little weight in contrast to Roberta's testimony. Starkan further claims the Administrative Law Judge, rather than the district court judge, more accurately assessed the testimony because he had the opportunity to observe the witnesses.

The critical witness in this issue is Roberta Hall. Her testimony in this case was introduced through a transcript of her testimony in the Gary Hall murder trial. Thus, neither the Administrative Law Judge nor the district court judge had the opportunity to

observe her. The record supports the district court's finding that Roberta's testimony is unreliable and we hold it is not of sufficient weight and reliability to support a finding as to the cause of Angleton's death or that Angleton's conduct constituted a deviation from his employment. Thus, we hold Angleton's death arose in the course of and out of his employment.

## II.

On cross-appeal, Bobbie Angleton takes issue with the district court holding that K.S.A. 44-520a(a) bars her claim for compensation. That statute states in part:

"No proceedings for compensation shall be maintainable under the workmen's compensation act unless a written claim for compensation shall be served upon the employer by delivering such written claim to him . , . within one (1) year after the death of the injured employee if death results from the injury within five (5) years after the date of such accident."

Bobbie argues this statute of limitations should be tolled from the time of Angleton's disappearance in February 1984 until the discovery of his death in March 1987. She also contends Angleton's date of death for purposes of workers compensation should be March 8, 1987. Angleton's death certificate states the date of death as "Mar. 8, 1987 (found)," the date of injury as February 5, 1984, and the date pronounced dead as March 8, 1987.

In response, the other claimants argue the date of death should be February 5, 1984, and there is no dispute over the fact Angleton actually died on that date. Furthermore, they contend K.S.A. 44-520a(a) should not be tolled merely because Bobbie did not know of and could not have discovered Angleton's death on February 5, arguing that the statute makes no such provision for tolling under these circumstances.

A review of Kansas case law reveals we have been quite strict in construing K.S.A. 44-520a(a) and its predecessor statutes. In *Graham v. Pomeroy*, 143 Kan. 974, 975, 57 P.2d 19 (1936), we stated that when the time for filing a claim for compensation has passed the right to recover is lost and cannot be revived. Also, in *Rutledge v. Sandlin*, 181 Kan. 369, 372, 310 P.2d 950 (1957), we held the statutory time to file for compensation ran from the date of the accident regardless of when the resulting injury is

discovered. None of our decisions, however, have involved an employee's undiscovered death arising in the course of and out of his or her employment. We find these facts call for a more realistic approach in keeping with the rule that the Workers Compensation Act be liberally construed to give a worker compensation. *Poole v. Earp Meat Co.*, 242 Kan. at 643.

In this case, Bobbie Angleton knew nothing of the fate of her husband, Delbert, until his body was discovered on March 8, 1987. Delbert's death was not reasonably ascertainable prior to that date. Thus, Bobbie had no opportunity to file a claim for compensation prior to that date. To strictly construe K.S.A. 44-520a(a) under these circumstances would defeat the purpose of the Workers Compensation Act. We hold that where death occurs to an employee arising out of and in the course of employment, but the fact of death is not ascertained or reasonably ascertainable until a date later than the actual date of death, the limitations of K.S.A. 44-520a(a) do not apply until the death of the employee is ascertained or is reasonably ascertainable.

Bobbie's claim for compensation and her application for a hearing were timely filed.

The judgment of the district court is affirmed in part and reversed in part.