(18 P.3d 278)

No. 84,972

SEAN M. BUTERA, *Appellee*, v. FLUOR DANIEL CONSTRUCTION CORPORATION and CNA GROUP, *Appellants*, and WOLF CREEK NUCLEAR OPERATING CORPORATION, *Respondent*.

Opinion filed January 26, 2001.

*John David Jurcyk* and *Douglas M. Greenwald*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellants.

*George H. Pearson III,* and *Eric I. Unrein,* of Topeka, for the appellee.

Before BEIER, P.J., PIERRON, J., and TOM MALONE, District Judge, assigned.

PIERRON, J.: In this appeal of a workers compensation award, the appellants Fluor Daniel Construction Corporation (Fluor), and CNA Group (CNA) contest the finding of the Workers Compensation Appeals Board (Board) that Sean Butera was acting within the scope of his employment when his injury occurred. The appellants also raise a jurisdictional challenge based on Butera's failure to appeal a preliminary order to this court.

Butera was an iron worker and rigger for Fluor. The nature of his work required that he be willing to temporarily relocate to remote construction sites and find long-term lodging convenient to the site. His employment contract provided for a mileage reimbursement until he found appropriate lodgings. After that, Fluor was paid a daily stipend intended to cover food, lodging, and driving costs.

Fluor contracted with Wolf Creek Nuclear Operating Corporation (Wolf Creek) to provide fueling services at the power plant near Burlington. Butera was assigned to the site for a period con-

templated to last about 6 months. Butera's primary residence is Cabool, Missouri, approximately 360 miles from Wolf Creek. Butera took up residence at a hotel in Garnett, a 30-minute drive from Wolf Creek. His first day of work was September 22, 1997, and he commuted daily from Garnett to Wolf Creek.

While driving to work on the evening of November 23, 1997, Butera was injured when he collided with a concrete barrier in front of an unlighted guard post on Wolf Creek property. The guard station was normally lit but a transformer failure had extinguished the lighting that night. Butera filed a workers compensation claim pursuant to the Kansas Workers Compensation Act (Act), K.S.A. 44-501 *et seq*. In a *preliminary* order, the administrative law judge (ALJ) invoked the "coming and going" rule and found Butera was not acting within the scope of his employment when he was injured, as he was commuting from his residence to the job site at the time. Butera petitioned the Board for review and it affirmed.

The ALJ subsequently held a *full* hearing and issued a final award, in which she reaffirmed that Butera had not been injured within the scope of his employment. On appeal, the Board reversed on this issue, concluding that travel was a necessary and integral part of Butera's job and the arrangement was of benefit to Fluor; therefore, the resulting injury arose out and in the course of his employment. The Board ruled the injury compensable. Fluor and CNA appeal.

The appellants first argue that this court does not have jurisdiction because Butera failed to appeal the Board's affirmance of the ALJ's preliminary order which concluded that his injury did not occur in the course of his employment.

Instead of Butera appealing to this court, he proceeded with a final hearing in which the ALJ again determined Butera was not within the Act. The Board reversed and found Butera's injury was compensable.

The appellants argue the parties developed all the facts relevant to jurisdiction in the preliminary hearing. Therefore, they contend, the ALJ's preliminary finding that Butera's injury was not within the Act was a jurisdictional finding based on all the facts. The ap-

pellants argue this rendered the order a "final order" on the issue of jurisdiction and that Butera's failure to appeal the order resulted in his waiver on this issue. We disagree.

The ALJ may issue summary and preliminary findings regarding medical compensation and other issues. The goal is to temporarily secure prompt compensation while the parties proceed with a more thorough exposition of the evidence. *Carpenter v. National Filter Service*, 26 Kan. App. 2d 672, 673-74, 994 P.2d 641 (1999).

Regarding such preliminary orders, K.S.A. 1999 Supp. 44-534a(a)(2) provides in relevant part:

"A finding with regard to a disputed issue of whether the employee suffered an accidental injury, whether the injury arose out of and in the course of the employee's employment, whether notice is given or claim timely made, or whether certain defenses apply, shall be considered jurisdictional, and subject to review by the board. Such review by the board shall not be subject to judicial review. . . . Except as provided in this section, no such preliminary findings or preliminary awards shall be appealable by any party to the proceedings, and the same shall not be binding in a full hearing on the claim, but shall be subject to a full presentation of the facts."

In this case, the ALJ issued a preliminary order regarding whether the injury arose out of and in the course of the employee's employment. The statute explicitly states such orders are appealable to the Board but not subject to judicial review (meaning this court). Further, the statute provides that preliminary orders are not binding and are subject to a later full presentation of the facts. K.S.A. 1999 Supp. 44-534a squarely addresses the issue the appellants raise.

The appellants rely on *Rivera v. Cimerron Dairy*, 267 Kan. 875, 879, 988 P.2d 235 (1999), in which the court held an order of the Board dismissing the cases for lack of jurisdiction was a final order, and the claimants were entitled to request judicial review of the order. The jurisdictional issue in *Rivera* was whether the defendant, as an agricultural enterprise, exempted itself from the Act when it allowed its workers compensation insurance to lapse. The question was whether the ALJ was able to issue *any* rulings concerning the incidents at hand. In contrast, both parties here acknowledge they are subject to the Act.

To hold that Butera has impliedly waived his rights to a full hearing under these circumstances would stretch *Rivera's* holding beyond its facts and run afoul of the plain language in K.S.A. 1999 Supp. 44-534a(a)(2). The appellants' jurisdictional challenge lacks merit.

Our next issue is whether Butera's injury, which occurred during his commute to work, fell within the "inherent travel" exception due to the fact he had been temporarily residing in a hotel.

Whether an injury arose out of and in the course of employment is a question of fact, and we review for substantial competent evidence. *Brobst v. Brighton Place North*, 24 Kan. App. 2d 766, 771, 955 P.2d 1315 (1997). In general, courts construe the Workers Compensation Act liberally for the purpose of bringing employers and employees within the coverage of the Act. *Chapman v. Beech Aircraft Corp.*, 258 Kan. 653, 655, 907 P.2d 828 (1995).

K.S.A. 1999 Supp. 44-508(f) provides in relevant part:

"The words 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include injuries to the employee occurring while the employee is on the way to assume the duties of employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence. An employee shall not be construed as being on the way to assume the duties of employment or having left such duties at a time when the worker is on the premises of the employer or on the only available route to or from work which is a route involving a special risk or hazard and which is a route not used by the public except in dealings with the employer."

At the time he was injured, Butera was driving from his hotel to the job site to begin his shift. The appellants argue the hotel was, in essence, Butera's residence for the purposes of determining whether Butera was on his way to the site to assume the duties of his employment. As a result, the appellants urge that the "coming and going rule" removes Butera from the scope of the Act and renders his injury noncompensable.

Butera argues his travel to the worksite should be considered in the context of his extended stay away from home. Butera reasons he was required by the nature of his work to take up a remote residence. As a result, his entire trip, including the commute from

the hotel to the job site itself, was within the scope of his employment.

Injuries incurred while going and coming from places where work-related tasks occur can be compensable where the traveling is intrinsic to the profession or required in order to complete some special work-related errand or special-purpose trip. *Brobst*, 24 Kan. App. 2d at 774. To be compensable, an injury "must arise out of a risk in some way peculiar to that in which he was engaged and not out of a hazard to which he would be equally exposed outside of the business." *Covert v. John Morrell & Co.*, 138 Kan. 592, 593-94, 27 P.2d 553 (1933); see also *Angleton v. Starkan, Inc.*, 250 Kan. 711, 718, 828 P.2d 933 (1992) (if employment exposes the worker to an increased risk of injury of the type actually sustained, the employer is liable for compensation).

Kansas recognizes that some professions require the employee to travel as a part of the job. The clearest example is a traveling salesman, where the employment consists of traveling from account to account within an allotted area. *Kennedy v. Hull & Dillon Packing Co.*, 130 Kan. 191, 195, 285 Pac. 536 (1930). The travel itself, being part of the job and performed under the employer's supervision, is within the Act. Similarly, Kansas considers an oil driller's driving on roads to assemble his crew to be part of the driller's task, and also within the Act. See, *e.g.*, *Bell v Allison Drilling Co.*, 175 Kan. 441, 445, 264 P.2d 1069 (1953).

A fixed-situs employee does travel to the job site in order to perform the business of the employer, but the Act excises this activity from the scope of compensation in order to keep the employer's burden manageable. In light of the cases cited above, when determining whether a given daily commute is within the scope of the Act, an increased risk to the employee or an increased utility to the employer is a useful indicator of whether the inherent travel exception should apply.

Travel itself was not part of Butera's job as a fitter, as it would be when one's job is to pick up a crew or visit accounts. Butera relocated to temporary quarters for the sole purpose of shortening his commute. While he was reimbursed for the hotel, he was not specifically reimbursed for his reduced commute once he relocated

to the hotel residence. His off-hours activities were not under Fluor's supervision, and he was not expected to accomplish anything on behalf of Fluor during his off-time. Butera, at the moment he was injured, faced no greater risk than other commuters who were traveling from their permanent residence. Similarly, Fluor did not enjoy some benefit over and above what it would have received had Butera been a local resident.

The Board relied upon *Messenger v. Sage Drilling Co.*, 9 Kan. App. 2d 435, 437, 680 P.2d 556, *rev. denied* 235 Kan. 1042 (1984), to support its finding that Butera's travel was an integral part of his employment. The *Messenger* court relied upon the need for the claimant to drive to distant drilling sites. At the time of his accident, the claimant was driving home from such a site. Messenger's extensive driving in the service of his employer increased the risk of a traffic accident, and it was reasonable to place the corresponding burden upon the employer. In contrast, Butera did not drive long distances as a matter of course. Rather, Butera relocated to a more convenient location for the express purpose of reducing his daily commute mileage. The nature of Butera's employment did not increase his risk of a road accident. As a result, *Messenger* does not apply to the facts here.

Further, Fluor paid a mileage rate for the initial journeys to the work site in order to set up a residence. This is akin to rounding up drillers in preparation for an oil drilling job at a remote site. If Butera had been injured on one of those trips, he would have a good argument for compensation because the special purpose of those trips was to lay groundwork for the job. The parties contemplated in their contractual relationship that those trips would be specially treated. However, once Butera set up long-term residence in the local hotel, the special purpose disappeared, and he simply commuted from the hotel to the job site. At that point, he lost the explicit mileage allowance and received a general stipend.

The contractual relation of the parties indicates Butera was not considered to be on his employer's business when he was not actually at the job site, and accidents arising when he was off work were personal in nature. See *SAIF v. Reel*, 303 Or. 210, 217-18, 735 P.2d 364 (1987) (where claimant was injured in remote lodg-

ings on his own time, there existed no continuity of employment establishing the injury arose in the course of his employment).

The cases Butera cites in support of his argument are not controlling. One line involves accomplishing a task on behalf of the employer, as in the oil drilling cases. These cases do not apply because the travel itself is part of the job. Another line deals with employees suffering injury while attending a continuing education seminar. See, *e.g.*, *Blair v. Shaw*, 171 Kan. 524, 528, 233 P.2d 731 (1951) (mechanic killed returning from auto manufacturer's seminar). These do not apply because they deal with special-purpose trips taken on behalf of the employer, more akin to Butera's initial trips to set up a residence.

Finally, Butera discusses *Wright v. Industrial Comm.*, 62 Ill. 2d 65, 338 N.E.2d 379 (1975). In *Wright*, the claimant supervised the installation of the company's machines in the factories of the purchasers. This process took 5 to 6 months, during which the claimant lived in a nearby hotel. During such work he received a per diem allowance. Claimant was killed in a traffic accident while he was off duty. In finding the injury compensable, the court adopted the rule that for such remote workers, any reasonable conduct which might normally be anticipated or foreseen by his employer was compensable. 62 Ill.2d at 69-71. The court also refused to distinguish between a continuously traveling employee and one traveling to a distant job location only to return when the work is completed. 62 Ill.2d at 68-69.

*Wright's* facts are similar to the facts involved here, but the court's approach appears too broad to fit with Kansas precedent. First, there appears to be a rational difference between a continuously traveling employee and one who stays in a hotel to reduce the daily commute. Second, the test in Kansas for compensable activity is not just whether the injury was "reasonably foreseeable." The injury must also result from a rational causal connection between the work itself and the resulting injury. See *Angleton*, 250 Kan. at 718. Finally, in *Bailey v. Industrial Comm'n.*, 247 Ill. App. 3d 204, 210-11, 617 N.E. 2d 305 (1993), the court distinguished *Wright* by stressing the claimant may have been on a work-related errand at the time of the accident.

There is nothing special about the commute itself that would make it part of Butera's job. The fact it originated from a hotel rather than his residence is of some importance. But standing alone, that fact does not provide any reasonable basis for distinguishing Butera's from the hotel commute from a normal commute from home. The Board erred on this issue.

On appeal, the appellants advance other arguments relating to the employer's premises and the special hazards exception. Butera raised these exceptions to the Board, but the Board did not address them. The appellants argue Butera's failure to cross-appeal forecloses our review. We do not believe it is necessary to address these issues because we have nothing from the Board to review and the case is resolved without considering them.

Reversed and remanded for further proceedings consistent with this opinion.