Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 6, 2005              Decided November 15, 2005

No. 04-7162

AZHAR ALI KHAN AND
ASMA AZHAR KHAN,
APPELLANTS

v.

PARSONS GLOBAL SERVICES, LTD., ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01574)

———

*Cyril V. Smith* argued the cause for appellants.  With him on the briefs was *Elaine Charlson Bredehoft*.

*Eugene Scalia* argued the cause for appellees.  With him on the brief was *Tanya Axenson Macallair*.

Before: GINSBURG, *Chief Judge*, and ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: To recover for injuries resulting from his kidnapping, Azhar Ali Khan and his wife, Asma Azhar Khan, sued Parsons Global Services Limited ("PGSL") and its affiliates and agents (together, "Parsons") for negligence and intentional infliction of emotional distress. The district court granted summary judgment to Parsons, ruling that the Khans' tort claims were barred by Mr. Khan's contractual agreement with PGSL to accept workers' compensation insurance as the exclusive remedy for injuries arising out of and in the course of his employment. On appeal, the Khans contend that the district court abused its discretion by granting summary judgment without permitting discovery requested under Fed. R. Civ. P. 56(f). They maintain that abuse of discretion is manifest where a motion for summary judgment is filed at the outset of a case prior to any discovery, key facts are in the defendant's exclusive possession, and the plaintiffs submit detailed affidavits describing the discovery they seek. Whether this is so depends principally on whether, as the Khans also contend, the district court erred as a matter of law in interpreting the D.C. Workers' Compensation Act ("WCA"), D.C. Code Ann. §§ 32-1501 *et seq.,* as it was incorporated in Mr. Khan's employment contract. Because Parsons considers Mr. Khan to have been a "traveling employee" at the time of his kidnapping and because it regards his injuries to have accrued due to the employment relationship, Parsons maintains that workers' compensation is Mr. Khan's sole avenue of relief. Because the traveling employee exception under the WCA, as interpreted by the District of Columbia Court of Appeals, is a narrow exception to the exclusion of coverage for injuries suffered while away from an employer's premises, we reverse and remand the case for further proceedings.

**I.**

In March 2001, Azhar Ali Khan, a British citizen, signed an employment contract (the "Assignment Agreement" or "agreement") with PGSL, which has its principal place of business in the District of Columbia. Mr. Khan agreed to work as an accountant in Manila, the Philippines, for a term of two years. At that time, Mr. Khan, Mrs. Khan, and their children were living in Kuala Lumpur, Malaysia, where Mr. Khan worked for Parsons. The agreement noted that Mrs. Khan and the children would live with Mr. Khan in Manila, and provided for a housing allowance as well as health benefits. The agreement contained a clause requiring Mr. Khan to accept workers' compensation "as full and exclusive compensation for any compensable bodily injury, occupational disease, or death resulting therefrom, *arising out of and in the course of* Employee's employment hereunder," (emphasis added), and a clause requiring him to arbitrate in Geneva, Switzerland, under the laws of the State of California, any claims "aris[ing] out of or in connection with" his employment. Mr. Khan departed for Manila on Tuesday, May 1, 2001, obtained lodging at a hotel, and had intended to look for an apartment on Sunday, May 6, 2001.

On Saturday evening, May 5, a day when PGSL's Manila offices were closed, Mr. Khan dined alone, paying cash for his meal in a local restaurant. As he returned to his hotel, he was abducted by three men. The kidnappers held Mr. Khan for approximately three weeks, during which time they chained him to the floor, attempted to hang him, and tortured him in other ways. During this period, the complaint alleges, Parsons officials promised Mrs. Khan that Parsons would pay the ransom demanded by the kidnappers; they also, however, took the position that paying the ransom would undercut Parsons' long-term interests by providing an incentive to kidnap Parsons employees in the future. On May 25, 2001, the kidnappers cut

off a portion of Mr. Khan's ear and sent the videotape of the event to Parsons. The next day, Mr. Khan was released after Parsons paid the ransom.

Mr. and Mrs. Khan sued Parsons, alleging that PGSL, various affiliated corporate entities (PGSL's parent company, Parsons Corp., and other Parsons Corp. subsidiaries), and several agents of the Parsons entities were negligent and liable for the intentional infliction of emotional distress. The alleged torts were improperly conducting negotiations with the kidnappers; delaying payment of the demanded ransom; refusing to provide Mrs. Khan with information about the kidnapping, including the amount of the ransom demand; telling her "lies" and "inconsistent, illogical, negligent" explanations for the actions taken; and forcing her to communicate with the kidnappers and to give them false promises that payment of the ransom was forthcoming. According to the complaint, if Mrs. Khan had been aware of the kidnappers' demands, she would have been able to obtain the money to free Mr. Khan, which could have prevented his torture and mutilation. Mr. Khan also alleged that Parsons coerced him into employment negotiations after his ordeal, required him to resume work "only a few weeks after his release," threatened to stop paying his housing allowance, medical expenses, and other allowances, and threatened to transfer him to Karachi, Pakistan, despite the fact that Mr. Khan would not "feel safe" there.

The complaint was filed in D.C. Superior Court on May 20, 2003. On July 22, 2003, Parsons removed the case to the federal district court pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, implemented in 9 U.S.C. § 201 *et seq.*, which provides federal jurisdiction in matters involving an arbitration agreement arising out of a commercial relationship where one party to the agreement is not a United States citizen. 9 U.S.C. §§ 202-203. The notice of

removal included the Assignment Agreement as an attachment. A week later, Parsons filed a motion to dismiss, or alternatively for summary judgment or to compel arbitration, arguing that Mr. Khan was "effectively still in travel status" at the time of his kidnapping. The Khans filed an opposition, seeking denial outright because, in part, the "horrifying injury and acts of deliberate torture . . . neither arose from, nor occurred in the course of, Mr. Khan's work for [PGSL]," and alternatively seeking the motion's denial "pending plaintiffs' opportunity to take discovery under Rule 56(f)." Pls.' Mem. Opp'n 1-2. They attached to their opposition declarations describing the discovery sought pursuant to Rule 56(f) as well as a statement describing material facts in dispute pursuant to L.R. 7.1(H) and 56.1. The district court granted summary judgment to Parsons and denied the Khans' motion for reconsideration. The Khans appeal. Our review of the grant of summary judgment is de novo, *Universal City Studios LLLP v. Peters*, 402 F.3d 1238, 1241 (D.C. Cir. 2005), accepting the factual allegations in the complaint as true, *Information Handling Services, Inc. v. Defense Automated Printing Services*, 338 F.3d 1024, 1029 (D.C. Cir. 2003). Our review of the decision to grant summary judgment instead of permitting discovery under Rule 56(f) is reviewed for abuse of discretion. *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 28 (D.C. Cir. 1997).

## II.

The Assignment Agreement, which settles on workers' compensation as the "full and exclusive compensation for any compensable bodily injury, occupational disease, or death resulting therefrom, *arising out of and in the course of* Employee's employment hereunder," copies the standard phrasing of many workers' compensation statutes. *See* 1 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION § 3.01 (2002) (hereinafter "LARSON'S"). As the case comes to us, the parties agree that the WCA, which defines

compensable injury in the same terms, controls the interpretation of the Assignment Agreement. In order to determine whether the district court abused its discretion by granting summary judgment before allowing the Khans to pursue requested discovery as contemplated by Rule 56(f), the court must first determine whether the district court's interpretation of the contractual bar reflected a proper construction of the WCA. Although it would not be unusual for this court to certify a "genuinely uncertain" question of District of Columbia law to the District of Columbia Court of Appeals, see *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1303 (D.C. Cir. 2002); D.C. Code § 11-723(a) (2001), we conclude that the Court of Appeals has already provided the guidance necessary to resolve this point of law.

The WCA provides that workers' compensation is an employee's exclusive remedy against the employer for injuries "arising out of" and "in the course of" the employment. D.C. Code § 32-1501(12). The District of Columbia has adopted the "going and coming" rule. As explained by the District of Columbia Court of Appeals in *Kolson v. Department of Employment Services*, 699 A.2d 357, 359 (D.C. 1997), "[t]he general rule [is] that the occurrence of employee injuries sustained off the work premise, while enroute to or from work, do not fall within the category of injuries in the course of employment." *Id*. at 359 (quoting 1 LARSON, THE LAW OF WORKMEN'S COMPENSATION § 15.00) (internal quotation marks omitted). The District of Columbia recognizes an exception to this rule for the "traveling employee," *see, e.g.*, *id*. at 360, and it is the scope of this exception that is at issue here.

The Khans contend that the district court erred as a matter of law by concluding that Mr. Khan's injuries arose out of and occurred in the course of his employment because the travel involved in his relocation to Manila was completed several days

prior to his kidnapping, his job as an accountant did not involve travel, and his kidnapping occurred on a non-working day after a non-business dinner. Under the district court's interpretation of the traveling employee exception, which the Khans maintain is unprecedented and radically expansive, "the [workers' compensation] statute covered every minute of every day of Mr. Khan's time in the Philippines." Br. of Appellants at 9. Further, the Khans contend, Mrs. Khan's injuries, which are alleged to have resulted from Parsons' refusal to inform her of the ransom demand, did not occur "in the course of" her husband's employment because those injuries resulted from Parsons' post-kidnapping refusal to divulge the ransom demand. Parsons responds that the Khans' injuries are covered by workers' compensation because they arose as a result of the fact that Mr. Khan was on a work assignment in a foreign country and his "injury ha[d] its origin in a risk created by the necessity of sleeping and eating away from home." Br. of Appellees at 15 (quoting 1 LARSON'S § 25.03[1] (2002)) (internal quotation marks omitted). Parsons therefore maintains that "all the natural incidents of [a business] trip which would be contemplated by the employer, such as the eating of meals in ordinary places at ordinary times, were in the course of that employment." *Id.* at 16 (quoting *Hurley v. Lowe*, 168 F.2d 553 (D.C. Cir. 1948)) (internal quotation marks omitted).

The district court appears to have treated Mr. Khan as a "traveling employee" of Parsons, concluding that because Mr. Khan's "injuries arose as he walked between a restaurant and a hotel he was patronizing as a consequence of his business-related travel for defendant Parsons," workers' compensation would be his exclusive remedy. Although Parsons, in support of its "travel status" gloss on the traveling employee exception,

relies on cases from Virginia,[1] California,[2] New York,[3] and Minnesota,[4] none is dispositive.  Those cases where workers' compensation coverage was found involved employees who were required to travel away from the employer's premises for a brief period, or who engaged in continuous travel because of the demands of their job.  For example, in *Capizzi v. Southern District Reporters, Inc.*, 459 N.E.2d 847, 849-50 (N.Y. 1984), a transcriber-typist employed by a New York firm slipped and fell on the first day of a four-day business trip to Toronto, Canada.  In *Southern Motor Lines Co. v. Alvis*, 104 S.E.2d 735 (Va. 1958), a long-haul truck driver whose work "required [him] to be on the road" died from an accidental fall from a hotel room, where his employer was putting him overnight as he broke up his journey on a long trip.  *Id.* at 738.  Neither of these cases, nor any of the other cases cited by Parsons,[5] indicates that an

---

[1] *S. Motor Lines Co. v. Alvis*, 104 S.E.2d 735 (Va. 1958).

[2] *Leonard Van Stelle, Inc. v. Indus. Accident Comm'n*, 382 P.2d 587, 591 (Cal. 1963).

[3] *Markoholtz v. Gen. Elec. Co.*, 193 N.E.2d 637 (N.Y. 1963); *Capizzi v. S. Dist. Reporters, Inc.*, 459 N.E.2d 847, 849-50 (N.Y. 1984).

[4] *Voight v. Rettinger Transp., Inc.*, 306 N.W.2d 133, 138 (Minn. 1981); *Epp v. Midwestern Mach. Co.*, 208 N.W.2d 87, 89 (Minn. 1973).

[5] In *Leonard Van Stelle,* 382 P.2d at 590-91, a real estate saleswoman was injured on "the return trip from the inspection" of a ranch property on behalf of her employer.  In *Markoholtz*, 193 N.E.2d 637, the court found that the employee, who was killed in a plane crash following a one-week vacation, was covered by workers' compensation because the crash occurred when he was "on his way to resume his employment" in Schenectady via Paris, "whither his employer's business had taken him" for a conference.  *Id.* at 639.

employee who relocates in order to accept a new job would fall within the exception. Mr. Khan was not on a trip away from a home base of Parsons' operations when he was injured, nor was he an itinerant employee. So far as the record reveals, he was hired to work at a fixed job site for a period of years.

The case with facts closest to those in the instant case is *Butera v. Fluor Daniel Construction Corp.*, 18 P.3d 278, 282 (Kan. App. 2001). In *Butera*, a fixed-site employee took up residence at a hotel for six months in order to shorten his commute to work. His work required that he be willing to temporarily relocate to remote construction sites and find long-term lodging convenient to the site. *Id.* at 280. The Kansas court held that because the nature of the employee's employment did not increase his risk of a road accident, the employee's off-site injuries in such an accident would not be covered by workers' compensation. *Id.* at 282. Under Kansas law, the court pointed out, an employee's injury must both be "reasonably foreseeable" and "result from a *rational causal connection* between the work itself and the resulting injury." *Id.* at 283 (emphasis added). No such work connection was present in Mr. Khan's case; he was employed as an accountant, and his injuries chiefly arose from his employer's alleged action and inaction, and that of its parent and affiliates, as negotiators for his release from the kidnappers.

*Butera* alone would seem to settle the matter except for the fact that the WCA may impose a less stringent causal requirement than the Kansas statute does. *See, e.g.*, *Harrington*

---

Neither of the Minnesota cases apply to Mr. Khan's situation either. The first, *Voight*, 306 N.W.2d at 134, involves a school bus driver injured while on "a weekend charter run," and the second, *Epp*, 208 N.W.2d at 87, involves a constantly itinerant truck driver injured while on a "weekend layover."

*v. Moss*, 407 A.2d 658, 662 (D.C. 1979). In the District of Columbia, what is required is that "the obligations or conditions of employment create the 'zone of special danger' out of which the injury arose." *Id.* (citing *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 507 (1951)). Even with this lesser causal requirement, however, it is apparent that the traveling employee exception does not extend to encompass every situation where an employee ventures abroad.

In *Kolson*, relied upon by Parsons as the "leading case" on this issue, Br. of Appellees at 12, the D.C. Court of Appeals explained that "[t]raveling employees are employees for whom travel is an integral part of their jobs, *such as those who travel to different locations* to perform their duties, *as differentiated from employees who commute daily from home to a single workplace.*" *Kolson*, 699 A.2d at 360 (emphasis added). Kolson was an interstate bus driver who sought coverage for injuries sustained when he was assaulted at 4:30 a.m. while walking to a hotel, arranged through his employer, because the bus driver was too tired to travel back to his home after a twelve-hour shift. *Id*. at 358. The court held that "when a traveling employee is injured while engaging in a reasonable and foreseeable activity that is reasonably related to or incidental to his or her employment, the injury arises in the course of employment." *Id*. at 361. Because the bus driver's injuries resulted from a foreseeable risk of his employment, which required traveling away from home for long and odd hours, *id.*, the court held that the injury rose in the course of and out of his employment. *Id*. at 362.

Although Parsons takes refuge in the "foreseeable activity" language of *Kolson*, it ignores the court's emphasis on the nexus between the travel, the work, and the injury that must exist if workers' compensation is to be obtained. *Id.* at 360-62. The terms of the Assignment Agreement did not indicate that Mr.

Khan needed to "travel to different locations" to perform his accounting duties; rather, he was to travel to a single location, PGSL's office in Manila, in order to take a new job as a Project Finance Administration Manager and thereafter enjoy a sedentary existence. Once in Manila, he commuted from home (temporarily, a hotel) to a single workplace. Even assuming that PGSL has more than one office location in Manila, there is nothing to indicate that travel formed an "integral part" of Mr. Khan's job. Parsons has never contested Mr. Khan's declaration to that effect. Thus, his injuries had nothing to do with fulfilling his responsibilities to PGSL as an accountant, much less with "travel away from [his] employer's premises" as that phrase is used in cases applying the traveling employee exception. *See, e.g.*, *Kolson*, 699 A.2d at 362; *Vieira v. D.C. Dep't of Employment Servs.*, 721 A.2d 579, 583 (D.C. 1998). The other examples of a traveling employee discussed in *Kolson,* 699 A.2d at 362, similarly indicate that the traveling employee exception would not extend to an employee hired to relocate for a lengthy period to a different city. As the Khans contend, were the rule otherwise, workers' compensation would cover all of the Mr. Khan's activities in Manila regardless of the work connectedness required by *Kolson*.

Even assuming for purposes of argument the merit of Parsons' theory that workers' compensation reaches injuries incurred by employees who are on "travel status" by virtue of having to relocate their permanent residence to accept a new job, coverage under that theory would not reach Mr. Khan's injuries. The Assignment Agreement limited Mr. Khan's relocation travel time from Kuala Lumpur to Manila to two days, and he was kidnapped several days after his arrival, on his day off, when PGSL's offices were closed. It is irrelevant that he was living temporarily at a hotel when he was kidnapped; the Assignment Agreement included payment of a housing allowance, so PGSL would be subsidizing his housing no matter where he lived for

the term of his employment. That he ate in a restaurant on his day off does not render him a traveling employee either; many non-traveling employees eat in restaurants on their days off. Parsons can cite to no authority, from within the District of Columbia or without, that an employee is converted into a traveling employee who is entitled to coverage under a state's workers' compensation statute simply because he is at the start of a new job at a fixed, out-of-state location.

The District of Columbia's interpretation of the traveling employee exception as a narrow exception to the going and coming rule is buttressed by decisions from other jurisdictions. For example, New York courts have not applied the traveling employee exception to bring employees in Mr. Khan's position within the reach of its workers' compensation statute. The New York workers' compensation statute does not apply to employees who are "employed to work at a fixed place or places outside the state," as opposed to employees called upon to perform "transitory work" outside of the state. *Cameron v. Ellis Constr. Co.*, 169 N.E. 622, 624 (N.Y. 1930). The New York Court of Appeals explained that this result would obtain even if the claimant were hired in New York; in other words, a New York contract that creates a fixed-state employment outside of New York does not confer upon the employee the status of being a "traveling employee" from New York and hence such an employee is not covered by the state's workers' compensation law. *Id.*; *see also Spomer v. Westron Corp.*, 312 N.Y.S.2d 730 (N.Y. App. Div. 1970); *Root v. Workmen's Comp. Appeal Bd.*, 636 A.2d 1263 (Pa. Commw. Ct. 1994). These holdings accord with the views of the authors of the leading treatise on workers' compensation that when "regular employment becomes centralized and fixed so clearly in another state that any return to the original state would itself only be casual, incidental and temporary by comparison," then the employee ceases to be considered to be "traveler" from the original state. 9 LARSON'S

§ 143.04[2][d] (citing cases); *cf. Lewis v. Knappen Tippetts Abbett Eng'g Co.*, 112 N.Y.S.2d 79 (N.Y. App. Div.), *aff'd* 108 N.E.2d 609 (N.Y. 1952). Like the employees in *Cameron*, *Spomer*, and *Root*, and unlike the employee in *Lewis*, Mr. Khan's employment was from the outset of the employment contract "fixed" and "centralized" in Manila, and neither the Khans nor Parsons have claimed any ongoing work-related contacts with Washington, D.C., where PGSL is located. *Cf. Hartham v. George A. Fuller Co.*, 453 N.Y.S.2d 843 (N.Y. App. Div. 1982). Although most of these cases rest their holdings on the territorial limitations of the state workers' compensation statute in question, the cases cited reflect the fact that the traveling employee exception cannot be used to bypass the jurisdictional limits of state workers' compensation laws. Once an employee lies outside a statute's territorial limits, which Parsons concedes Mr. Khan does, Br. of Appellees at 44, the traveling employee exception does not bring that employee back into the realm of the statute's coverage.

Parsons' position that any torts committed by Parsons "arose from the employment relationship" need not detain us. Mr. Khan contacted Parsons, the complaint alleges, at the insistence of the kidnappers. *See* Compl. ¶ 42. Parsons' contrary assertion is unsupported by affidavit, and, in any event, Mr. Khan's alleged injuries did not "arise out of and in the course of" Mr. Khan's status in the manner in which courts have interpreted the phrase. *See, e.g.*, *Harrington*, 407 A.2d at 662; *Joyner v. Sibley Mem'l Hosp.*, 826 A.2d 362, 374 (D.C. 2003). Rather, courts have followed Professor Larson's admonition that the fundamental question for coverage is one of "work connection." 1 LARSON'S §3.01. Therefore, the question is whether the injury is "reasonably related to or incidental to" the employment. *Kolson*, 699 A.2d at 361. Holding the WCA to apply to Mr. Khan's injuries would override this "basic concept of compensation coverage." 1 LARSON'S §3.01. Because the

traveling employee exception, as construed in *Kolson* by the District of Columbia's highest court, does not extend to travel status as defined by Parsons, the question whether Mr. Khan was on a "personal break" during his kidnapping does not arise.

Because Mr. Khan was not properly considered a "traveling employee" when he was kidnapped in Manila, the district court erred in entering summary judgment for Parsons on the ground that the Assignment Agreement barred tort recovery under the Khans' complaint. Because the agreement does not bar Mr. Khan's tort claims, the court has no occasion to address three related workers' compensation issues: whether there can be recovery for the intentional infliction of emotional distress notwithstanding WCA coverage, whether Mrs. Khan's claims are barred by the Assignment Agreement, and whether the Khans' claims against the Parsons' agents and corporate affiliates are likewise barred.

### III.

We need only briefly discuss the Khans' claim of Rule 56(f) error. Rule 56(f) provides that the district court "may refuse the application for [summary] judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had" if it "appear[s] from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." The court has long recognized that a party opposing summary judgment needs a "reasonable opportunity" to complete discovery before responding to a summary judgment motion and that "insufficient time or opportunity to engage in discovery" is cause to defer decision on the motion. *Martin v. Malhoyt*, 830 F.2d 237, 256 (D.C. Cir. 1987); *see also First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988).

Parsons attached three affidavits to its motion for summary judgment. Its motion was filed in lieu of an answer, before a scheduling order, discovery, or initial disclosures, and the motion relied upon information in Parsons' sole control. In response to the motion, the Khans filed two Rule 56(f) declarations by their counsel outlining the nature of the discovery they sought. As the Khans suggest, "[i]t makes no sense for [Parsons] to assert that the key issue [of WCA coverage] in the case had already been 'determined' by its insurance carrier," Reply Br. at 3, and as it was, the Khans were forced "to operate in the dark, with no discovery – not even a copy of the alleged workmen's compensation insurance agreement." Br. of Appellants at 15. *Cf. Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1271 (6th Cir. 1998). Because the district court never ruled on the Khans' initial Rule 56(f) discovery request, on remand, the district court should address both Rule 56(f) declarations.

Accordingly, we reverse the grant of summary judgment and remand the case to the district court for further proceedings. We do not rule on the Khans' challenges to the arbitration clause in the Assignment Agreement as they still seek discovery regarding it.