Winston D. **WILLIAMS**, Plaintiff,

v.

Eric K. **SHINSEKI**, Secretary of the Department of Veterans Affairs, Defendant.

**Civil Action No. 10-00070 (CKK)**

United States District Court, District of Columbia.

Signed 03/30/2011

Winston D. Williams, Bowie, MD, pro se.

Rocquelle Angelique Jeri, Law Offices of Rocquelle A. Jeri, Bowie, MD, for Plaintiff.

Rhonda Lisa Campbell, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION & ORDER

COLLEEN KOLLAR-KOTELLY, United States District Judge

Plaintiff Winston D. Williams ("Williams"), brings this action *pro se* against Eric K. Shinseki, in his official capacity as the Secretary of the United States Department of Veterans Affairs

(the "VA"), alleging that he was discriminated against on the basis of his race, national origin, and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (the "ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, in connection with his non-selection for an electrical engineering position with the VA. Presently before the Court is the VA's [6] Motion to Dismiss or, in the Alternative, for Summary Judgment, which Williams has opposed. Although styled in part as such, the VA's motion plainly is not a motion to dismiss for failure to state a claim; the VA relies nearly exclusively on materials outside the scope of the pleadings and makes no attempt to root its arguments in the factual allegations set forth in Williams' pleadings or to articulate how those allegations fall short of the applicable pleading standards. Meanwhile, insofar as the VA's motion is styled as a motion for summary judgment, it is premature. The basis of the motion goes to the ultimate issue in this action—namely, whether Williams' non-selection for the position in question was motivated by a discriminatory animus. Williams has yet to have the opportunity to conduct any discovery in this action, and in opposition to the instant motion, he has identified specific items of information that he might seek

in the course of discovery. Williams' claims may or may not ultimately turn out to have sufficient merit to survive a motion for summary judgment. Nevertheless, pre-discovery motions for summary judgment are generally disfavored, and are particularly so where the motion turns upon whether the plaintiff can establish an inference of discriminatory animus. Williams is entitled to pursue at least some discovery before being asked to defend his claims on this ground. Therefore, based upon the parties' submissions, the relevant authorities, and the record as a whole, the Court shall deny the VA's [6] Motion to Dismiss or, in the Alternative, for Summary Judgment in its entirety.[1]

## I. BACKGROUND

Williams commenced this action on January 14, 2010, alleging that he was discriminated against on the basis of his race (Asian), national origin (Sri Lankan), and age (sixty two) in connection with his non-selection for an electrical engineering position with the VA. *See* Compl. Even though the instant motion is ostensibly based in part on Williams' failure to state a claim for relief, the VA has failed to identify the well-pleaded factual allegations in Williams' pleadings, and so the Court begins there.[2]

While Williams was not employed by the VA at the time he applied for the position

---

1. While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Compl., Docket No. [1]; Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J. ("Def.'s Mem."), Docket No. [6]; Pl.'s Resp. to Oppose Def.'s Mot. to Dismiss or in the Alternative for Summ. J. ("Pl.'s Opp'n"), Docket No. [9]; Def.'s Reply to Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Reply"), Docket No. [11]; Pl.'s Surreply to Def.'s Reaponse [sic] Towards Pl.'s Opp'n ("Pl.'s Surreply"), Docket No. [15].

2. In setting forth the factual background relevant to the instant motion, the Court accepts as true all the well-pleaded factual allegations set forth in Williams' *pro se* pleadings and memoranda—namely, his complaint, opposition, and surreply. *See Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C.Cir.2009) (when presented with a motion to dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual allegations contained in the complaint), *cert. denied*, 559 U.S. 1039, 130 S.Ct. 2064, 176 L.Ed.2d 418 (2010); *Richardson v. United States*, 193 F.3d 545, 548 (D.C.Cir.1999) (when a *pro se* litigant has filed multiple submissions, the district court should endeavor to read the

in question, he was previously employed by the VA for a period of approximately thirteen years, from 1988 to 2001. *See* Compl. ¶¶ 1-2. During that time period, Williams worked in the VA's Consulting Support Service (the "CSS"), in its Washington, D.C. office. *Id.* Nearly all of Williams' colleagues were within one or two years of his age, which by the end of Williams' tenure with the VA was in the mid- to late-fifties. Pl.'s Resp. ¶ 2. The vast majority of his colleagues—75-80%—were, like Williams, Asians. *Id.* Williams, however, was the only Sri Lankan. *Id.* Williams' former supervisor, with whom he remains on good terms, once remarked to him, "I can tell by your mannerisms that you are not an Indian." Pl.'s Resp. ¶ 2.

In the course of his thirteen-year tenure with the VA, Williams functioned as one of the lead electrical engineers in connection with the construction of some of the largest health care facilities built by the VA, and in that role generated millions of dollars in cost savings for the VA. Compl. ¶ 1; Pl.'s Opp'n Ex. 4. His job performance was consistently "excellent" and he was repeatedly acknowledged for his superior performance by his supervisors. Compl.

¶ 1; Pl.'s Opp'n Ex. 4. In 2001, Williams left the VA voluntarily in order to assume a position with the Architect of the Capitol, where he apparently remains employed today. Compl. ¶ 4.

On or about March 27, 2007, the VA announced an opening for an electrical engineering position in the Office of Construction and Facilities Management within the CSS—Electrical Engineer, GS-0850-13/14. Compl. ¶ 1; Pl.'s Resp. ¶ 5. According to the announcement, the advertised position would involve providing consulting support to executives at various medical centers on unique and unusual electrical engineering problems. Def.'s Ex. E.[3]

Williams applied for the position, which was the same or very similar to the position he previously held during his thirteen-year tenure at the VA. Compl. ¶ 1. While Williams submitted a narrative essay statement in support of his application, commonly referred to as a "KSA,"[4] Williams' statement was allegedly purposefully misplaced.[5] Pl.'s Opp'n at 9. At the time of his application, Williams had approximately thirty years of experience in electrical engineering and was a licensed professional electrical engineer in four ju-

---

filings together and as a whole). In addition, the VA has included with its submissions a questionnaire that was completed by Williams in the course of the investigation conducted by the Equal Employment Opportunity Commission (the "EEOC"). *See* Written Aff. of Winston D. Williams ("Pl.'s Resp."), Docket No. [6-1]. Williams' responses to the questionnaire are confined to the claims otherwise identified in his pleadings and do not expand the scope of this action; nevertheless, because Williams' responses are helpful in describing the precise contours of his claims, the Court shall reference those responses, as appropriate, in the course of identifying "the facts as alleged by the plaintiff." *Kursar v. Transp. Sec. Admin.*, 581 F.Supp.2d 7, 14 (D.D.C.2008); *cf. Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C.Cir.2007) (district court may consider supplemental materials by a *pro se* litigant on a motion to dismiss "in order to clarify the

precise claims being urged."); *Baird v. Snowbarger*, 744 F.Supp.2d 279, 287–88 n. 2 (D.D.C.2010) (district court may consider an EEOC intake questionnaire as a public record or as integral to plaintiff's complaint).

3. While appended to the VA's submissions, the announcement is incorporated into the Complaint. *See* Compl. ¶ 1.

4. The acronym "KSA" stands for Knowledge, Skills, and Abilities.

5. In support of the instant motion, the VA cites to various statements made by Williams that are purportedly inconsistent with his allegation that he ever submitted a KSA in connection with his application, but those statements appear in materials outside the scope of the pleadings.

risdictions—the District of Columbia, Maryland, Michigan, and Virginia. Compl. ¶ 3. The VA determined that Williams was qualified for the advertised position and identified him as one of a handful of candidates for further consideration. Pl.'s Resp. ¶¶ 6-7; Def.'s Ex. E1 ¶ 9.[6]

Sat Gupta ("Gupta") is the Chief of the CSS and was the individual primarily responsible for overseeing the selection process for the advertised position. Def.'s Ex. E1 ¶ 1. Gupta was approximately seventy years old at the time in question (approximately eight years older than Williams), and is an Asian of Indian national origin. Pl.'s Resp. ¶ 4; Def.'s Ex. E1 ¶ 3. The other two members of the selection panel were Larry Lau ("Lau"), who is Vietnamese, and Khim Chudasama ("Chudasama"), who is Indian. Pl.'s Resp. ¶¶ 9, 16; Def.'s Ex. E1 ¶ 10.

Gupta denied Williams the opportunity to interview for the position. Compl. ¶ 1. While Gupta and Williams had become acquainted with one another during Williams' prior employment with the VA, Gupta was never Williams' co-worker or supervisor and had no personal knowledge of Williams' abilities or performance. Compl. ¶¶ 1-2; Pl.'s Opp'n at 6. Nevertheless, in explaining why he did not allow Williams an interview, Gupta represented that he was already aware of Williams' capabilities and performance. Def.'s Ex. E1 ¶¶ 10, 20. At the time, Gupta was aware of Williams' age and national origin, and Williams contends that his non-selection was motivated by a discriminatory animus. Pl.'s Opp'n at 2; Def.'s Ex. E1 ¶¶ 3, 5.

Ultimately, the position was awarded to Dat Tran ("Tran"), who is Vietnamese and was in his late-forties at the time of his selection. Pl.'s Resp. ¶ 13. Whereas Williams holds a degree in electrical engineering, Tran holds only a degree in engineering technology. Pl.'s Opp'n at 7. In the history of the VA, no one with a degree in engineering technology had previously been hired for a senior electrical engineering position. Pl.'s Opp'n at 7.

Williams contends that Tran's selection for the position was predetermined far in advance—*i.e.*, that he was "preselected." Compl. ¶ 1; Pl.'s Opp'n at 5. On March 25, 2004, approximately three years before the position in question was announced, Williams had lunch with Lau and various other VA employees, during which Lau "boasted to [Williams] that he was planning [to] bring on-board a good friend and country man [from Vietnam] by the name Mr. Dat Tran." Pl.'s Opp'n at 10. Williams alleges that, in order to ensure Tran's selection, Gupta falsified documents and misconstrued Tran's experience and education.[7] Pl.'s Opp'n at 2-4, 9. Williams further contends that Gupta misleadingly compared Williams' grade-point-average on one degree with an entirely different degree held by Tran in order to "discredit" Williams.[8] Pl.'s Opp'n at 5-6.

---

**6.** The referenced document is appended to Williams' complaint, Compl. Ex. 1, but the Court shall cite to the copy accompanying the VA's submissions because it appears that Williams' version is incomplete.

**7.** Williams also alleges that Tran misrepresented his education in his application materials. Pl.'s Opp'n at 4. Even if true, that allegation simply has no bearing on whether Williams' non-selection was discriminatory; if anything, by suggesting that the VA was misled into

believing that Tran was more qualified than he actually was, the allegation actually undermines Williams' position.

**8.** While Williams at times appears to attribute Gupta's comparison to incompetence, construing Williams' pleadings liberally, the Court reads the allegation that Gupta was trying to "discredit" Williams as an allegation that Gupta did so intentionally. Pl.'s Opp'n at 5.

■ More broadly, Williams alleges that there is an "Indian-Mafia"-style hiring practice at the CSS. Pl.'s Resp. ¶ 16. Specifically, he contends that Gupta "has no problem absorbing his fellow Indians but has a problem with others." Pl.'s Resp. ¶ 23. In support, Williams cites to two examples. First, Gupta was directly or indirectly involved in hiring Chudasama, one of the other panelists involved in selecting Tran over Williams for the advertised position, who was himself hired to fill a non-advertised position pursuant to an "inside arrangement" with Gupta. Pl.'s Resp. ¶ 16. Gupta and Chudasama are both Indians. Pl.'s Resp. ¶ 16. Second, Gupta was similarly involved with hiring Manu Thuhai, also Indian, who in contrast to Williams was hired without "issues or need for special qualification or experience." Pl.'s Resp. ¶ 16.[9]

On July 31, 2007, Williams filed a formal complaint with the EEOC. Compl. Ex. 1. Following an investigation, Williams requested a hearing before an EEOC Administrative Law Judge. Compl. Ex. 1. Rather than holding a hearing, the Administrative Law Judge granted summary judgment in the VA's favor. Compl. Ex. 1. On November 9, 2009, the EEOC issued a final decision affirming the grant of summary judgment in the VA's favor, along with a right-to-sue letter. Compl. Ex. 1. Williams commenced the instant action on January 14, 2010.

## II. LEGAL STANDARD

■ Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Rule 12(b)(6) provides a vehicle for parties to challenge the sufficiency of a complaint on the ground that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When presented with a motion to dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual allegations contained in the complaint. *Atherton*, 567 F.3d at 681. Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of· a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

---

9. Williams' pleadings also contain a fair number of allegations directed towards alleged favoritism in the hiring process. To the extent these allegations do not turn on discriminatory animus, the Court observes that, even if the decisionmakers in question were motivated in part by a desire to favor their "associates" or "buddies," that alone would not support a claim under Title VII or the ADEA. *See Smith v. Napolitano*, 626 F.Supp.2d 81, 97 (D.D.C. 2009) (even if there has been "favoritism" in the selection process, preselection does not violate anti-discrimination statutes where preselection is not based on a protected characteristic such as race, national origin, or age).

129 S.Ct. at 1949. The plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Id.* at 1950. When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.*

While "[a]ll pleadings shall be so construed as to do substantial justice," Fed. R. Civ. P. 8(f), a document filed by a party proceeding *pro se* must be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (internal quotation marks omitted). For example, where a *pro se* party has filed multiple submissions, the district court must generally consider those filings together and as a whole. *Richardson*, 193 F.3d at 548; *see also Sieverding v. U.S. Dep't of Justice*, 693 F.Supp.2d 93, 101 n. 2 (D.D.C.2010) (considering factual allegations in *pro se* plaintiff's prior pleadings even though they had technically been superseded by filing of amended complaint). Moreover, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94, 127 S.Ct. 2197 (internal quotation marks omitted). Nonetheless, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C.Cir.1981). Even with the liberality afforded *pro se* complaints, the district court "need not accept inferences unsupported by the facts alleged in the complaint or legal conclusions cast in the form of factual allegations."

*Kaemmerling v. Lappin*, 553 F.3d 669, 677 (D.C.Cir.2008) (internal quotation marks omitted).

## III. DISCUSSION

Although styled in part as such, the instant motion plainly is not a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). While the VA recites the general standard governing such motions, including the axiom that "[t]he allegations in a plaintiff's complaint are presumed to be true at this stage" of the litigation, Def.'s Mem. at 9-10, the VA proceeds to completely ignore that standard. Its recitation of the relevant factual background does not include a single citation to Williams' complaint. *Id.* at 2-9. All of its arguments presume the consideration of materials falling outside the scope of the pleadings, including, but not limited to, documents prepared by the selection panel justifying their selection decision and statements made by Williams in the course of his prior deposition testimony. At no point does the VA make an attempt to root its arguments in the factual allegations in the complaint or to explain how those allegations fall short of the liberal pleading standards imposed by the Federal Rules of Civil Procedure. The VA's attempt to characterize its motion as one for failure to state a claim is entirely disingenuous. The VA has simply failed to supply any basis for concluding that Williams' claims that he was discriminated against on the basis of his race, national origin,[10] and age in violation of Title VII and the ADEA "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ.

---

**10.** Construing his pleadings liberally, it is clear that Williams intends to assert a claim that he was discriminated against on the basis of his national origin in addition to his race and age. *See Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973) ("The term 'national origin' ... refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."). Several of his allegations are dedicated towards suggesting that he was discriminated against as a person of Sri Lankan origins by individuals of Indian origins.

P. 12(b)(6). Nor are Williams' claims so "fundamentally incredible" such that might warrant summary dismissal. *Wilson v. Obama*, 770 F.Supp.2d 188, 192 (D.D.C. 2011). For these reasons, the instant motion is denied insofar as it seeks dismissal for failure to state a claim.

 Meanwhile, insofar as the VA's motion is styled as a motion for summary judgment, it is premature. In this Circuit, it is well-established that "[p]re-discovery summary judgment motions are usually premature and hence disfavored." *Bourbeau v. Jonathan Woodner Co.*, 600 F.Supp.2d 1, 3 (D.D.C.2009). Ordinarily, "[s]ummary judgment ... is proper only after the plaintiff has been given adequate time for discovery." *Info. Handling Servs., Inc. v. Defense Automated Printing Servs.*, 338 F.3d 1024, 1032 (D.C.Cir.2003) (internal quotation marks omitted).[11] This is especially true in employment discrimination cases. "Before discovery has unearthed relevant facts and evidence," an employment discrimination plaintiff may have difficulty defining the precise formulation of his case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Indeed, even after an employment discrimination plaintiff has been afforded a meaningful opportunity to conduct discovery, district courts must still approach summary judgment with "special caution," in recognition that it may be difficult for the plaintiff in an employment discrimination action to uncover clear proof of discriminatory intent. *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879–80 (D.C.Cir.1997), *vacated on other*

*grounds*, 156 F.3d 1284 (D.C.Cir.1998) (en banc).

 The VA's motion goes to the ultimate issue in this action—namely, whether Williams' non-selection for the position in question was motivated by a discriminatory animus. While formulated in a variety of ways, the entire basis of the instant motion is that Williams cannot prove that the VA's selection decision was discriminatory because "[t]he record is replete with the [a]gency's articulated legitimate, nondiscriminatory reasons on which it based its decision that Mr. Tran was more qualified." Def.'s Mem. at 13. Notably, the VA never suggests that Williams was objectively unqualified; instead, it maintains that the selection panel was simply more "impressed, both quantitatively and qualitatively" with Tran's experience and education, Def.'s Reply at 3, a determination that admittedly turned on a balancing of various subjective considerations, Def.'s Mem. at 20. The VA's proffered reason for its selection decision may or may not be true, and it may or may not warrant summary judgment after discovery, but it is entirely premature to evaluate such a claim before Williams' has been afforded an opportunity to pursue discovery. Unsurprisingly, courts routinely deny prediscovery motions for summary judgment under circumstances similar to those presented here. *See, e.g., Chappell–Johnson v. Powell*, 440 F.3d 484, 488–89 (D.C.Cir. 2006) (federal employee was entitled to conduct discovery concerning employer's process for determining qualifications for

---

11. While Williams may or may not have had the opportunity to seek some discovery during the EEOC's investigation, it appears that he did not actually obtain any discovery. *See* Def.'s Ex. I at 2 n.2. In any event, pre-discovery motions for summary judgment are still disfavored "even if a plaintiff has had an opportunity to collect evidence through the EEO administrative process." *Richardson v.*

*Gutierrez*, 477 F.Supp.2d 22, 30 (D.D.C.2007); *see also Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045–46 (D.C.Cir.2008) (district court erred in granting summary judgment on plaintiff's employment discrimination claim before permitting discovery, even though the court had the benefit of an administrative record).

vacancies before district court decided employer's summary judgment motion; discovery might uncover evidence raising an inference of discrimination); *McWay v. LaHood*, 269 F.R.D. 35, 39 (D.D.C.2010) (summary judgment inappropriate where plaintiff needed discovery to rebut the defendant's asserted legitimate, non-discriminatory reasons); *Farris v. Rice*, No. 05 Civ. 1975, 2007 WL 1697083, at *4–5 (D.D.C. June 12, 2007) (plaintiff's evidence "loosely suggest[ing] discrimination" sufficient to warrant discovery).

Ironically, the need for discovery is made plain by the VA's own arguments. The VA cannot at one moment suggest that Williams is not entitled to discovery and then fault Williams for failing to "come forward with persuasive evidence," Def.'s Mem. at 18, such as a "meaningful comparative evaluation[ ] regarding the candidates," Def.'s Reply at 2, or what "information may have been discussed" during Tran's interview, *id.* at 13. Obviously, Williams "has no direct knowledge" of Tran's qualifications, Def.'s Mem. at 18, but that is where discovery comes in. It is entirely non-controversial to suggest that, prior to discovery, many allegations will necessarily be "unsubstantiated." Def.'s Reply at 7.

Meanwhile, Williams repeatedly asserts the need for discovery. He "calls for discovery," and accuses the VA of resisting discovery requests before the EEOC. Pl.'s Opp'n at 8, 12. Moreover, without opining on whether Williams would actually be entitled to such discovery, the Court can glean the following specific discovery requests, however inartfully articulated, from the four corners of Williams' *pro se* pleadings:

- Documents concerning the VA's hiring and re-hiring practices prior to mid-2007, *see* Compl. ¶ 1;

- Documents concerning Gupta's falsification of Tran's education and experience, *see* Pl.'s Opp'n at 3;

- Documents concerning Tran's education, experience, and professional certifications, *see* Pl.'s Opp'n at 3; Pl.'s Surreply at 8–9;

- Documents concerning Tran's submission of a KSA in connection with his application, *see* Pl.'s Opp'n at 10, 12;

- Documents concerning merit ratings and/or evaluations pertaining to Tran's experience and qualifications, *see* Pl.'s Opp'n at 12; and

- Documents concerning Williams' employment, including his performance, at the VA, Pl.'s Surreply at 13.

Little within this universe is likely to be within Williams' possession, custody, or control, counseling strongly in favor of denying the VA's pre-discovery motion for summary judgment. *See Davis v. Grant Park Nursing Home LP*, 639 F.Supp.2d 60, 75 (D.D.C.2009).

In the end, Williams' claims may or may not turn out to have sufficient merit to survive a motion for summary judgment. Nevertheless, pre-discovery motions for summary judgment are generally disfavored, and are particularly so where, as here, the motion turns upon whether the plaintiff can establish an inference of discriminatory animus. Williams is entitled to a "reasonable opportunity" to conduct discovery before he is asked to respond to a motion for summary judgment resting on this ground. *Khan v. Parsons Global Servs., Ltd.*, 428 F.3d 1079, 1088 (D.C.Cir. 2005). Therefore, the Court shall deny the VA's pre-discovery motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, it is, this 30th day of March, 2011, hereby

**ORDERED** that the VA's [6] Motion to Dismiss or, in the Alternative, for Summary Judgment is DENIED in its entirety as follows: (a) the motion is DENIED WITH PREJUDICE insofar as it seeks dismissal of Williams' [1] complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (b) the motion is DENIED WITHOUT PREJUDICE insofar as it seeks dismissal of Williams' [1] complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure; it is further

**ORDERED** that, on or before Thursday, April 21, 2011, at 5:00 p.m., the VA shall serve and file an answer to Williams' [1] complaint, which shall, to the greatest extent possible, respond to any additional factual allegations raised by Williams in his [9] opposition memorandum and [15] surreply; it is further

**ORDERED** that an Initial Scheduling Conference shall be held on Tuesday, May 3, 2011, at 9:30 a.m., in Courtroom 28A of the Courthouse for the United States District Court for the District of Columbia located at 333 Constitution Ave., N.W., Washington, D.C. 20001; Williams is advised that he must appear in person or by counsel; and it is further

**ORDERED** that the Clerk of the Court shall mail a copy of this Memorandum Opinion and Order to Williams at his address of record:

Winston D. Williams

13004 Pine Court

Bowie, MD 20720

